ST. LOUIS & S. F. R. CO. v. CLARK.

No. 2902.    Opinion Filed May 12, 1914.

Rehearing Denied August 11, 1914.

(142 Pac. 396.)

1.     **APPEAL AND ERROR**—Law of the Case—Decision on Prior Appeal. The decisions on all questions of law made by an appellate court on appeal become the law of that particular case, both for the trial court and this court on a second hearing, providing the facts presented in the second hearing, on the point formerly decided, are substantially the same as in the first hearing.

2.     **SAME.** The facts in the second hearing of this case, on the points decided in the former appeal, are substantially the same as in the first trial; there was not sufficient difference to take the case out of the law announced in the first appeal.

3.     **NEGLIGENCE**—''Last Clear Chance.'' The doctrine of ''last clear chance'' is recognized by the courts as an exception to the general rule that the contributory negligence of the person injured will bar a recovery, without reference to the degree of negligence on his part; and under this exception to the rule the injured person may recover damages for an injury resulting from the negligence of the defendant, although the negligence of the injured person exposed him to the danger of the injury sustained, if the injury was more immediately caused by the want of care, on the defendant's part, to avoid the injury, after discovering the peril of the injured person.

4.    RAILROADS—Crossing Accident—Sufficiency of Evidence—Negligence. The evidence in this case was sufficient to take the case to the jury on the question of defendant's negligence and plaintiff's contributory negligence. See former opinion, 24 Okla. 764, 108 Pac. 361, 2 syllabus.

(Syllabus by Brewer, C.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Action by James H. Clark against the St. Louis & San Francisco Railroad Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

See, also, 24 Okla. 764, 108 Pac. 361.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff in error.

*J. L. Hamon* and *Charles Mitschrich,* for defendant in error.

Opinion by BREWER, C.  This is an action to recover damages occasioned by the collision of a train with defendant in error's wagon at a railroad crossing in the town of Cache. The cause arose and was tried first in the district court of Oklahoma Territory, at which trial the judge held that under the evidence the plaintiff was not entitled to recover. Clark, the plaintiff below, prosecuted an appeal to the Territorial Supreme Court, where the same was pending on a petition for rehearing at the time of statehood, and this court, in an opinion by Mr. Justice Kane, reported in 24 Okla. 764, 108 Pac. 361, reversed the action of the trial court in sustaining a demurrer to plaintiff's evidence, and remanded the cause for a new trial. Two points were urged on the former appeal, and were disposed of by the court: (1) Was plaintiff guilty of contributory negligence? and (2), if he was, is he entitled to the benefit of the doctrine of the last clear chance? Both these points are argued here again, together with certain other minor propositions incidental to them. In the former opinion the court held, briefly stated, that under the evidence in the case the trial court had no right to say, as a matter of law, that the plaintiff's negligence prevented a recovery, and on the second point the court held that under the evidence the humanitarian rule, perhaps more generally referred

to as the doctrine of "the last clear chance," was not involved and had no application. The statement of the case and all the evidence in the former opinion is so comprehensive and full of details that we do not consider it necessary to repeat them here. There was some difference in the testimony in the last trial from that shown in the first, and this we will notice later on, but these differences, in our judgment, are not of sufficient consequence to require us to go again into a detailed analysis of the evidence presented.

1.   As to whether or not plaintiff's act in driving upon the railroad crossing was negligent, so as to prevent a recovery, the court held in the former opinion as follows in the syllabus:

"In an action to recover damages for alleged negligence whereby the plaintiff was injured at a railroad crossing, it appeared: That the plaintiff at the time of the accident was driving north on a street in a village towards the railroad crossing, in a farm wagon covered with a wagon sheet, the corners of the sheet being tied down at each end. At the point of collision the railroad track runs east and west, the street running north and south. The plaintiff was driving a team of gentle horses, and was traveling about three or four miles an hour. As he approached within about 50 feet of the crossing, he stooped forward, looked up and down the track, and listened for approaching trains, but did not see or hear any. That from the place where he looked and listened he could see the track to the east, the direction from which the train was coming, for a distance of 500 or 600 feet, the view beyond that being obstructed by a section house which stood east of the street on which he was traveling and near the track. That after he looked and listened he sat down on the wagon seat, which was eighteen or twenty inches under the wagon sheet, and drove on towards the crossing in an ordinary walk, and continued at this pace until his wagon was struck by the train. That he knew the crossing was there, having crossed it several times before. That his hearing and eyesight are fairly good. That before the accident the bell of the engine did not ring, neither did the whistle blow. That he did not see any part of the train or engine, and did not know there was a train approaching until he was struck. That the train was about two and one-half hours late, and was running at the rate of 30 or 40 miles an hour and no effort was made to stop

it before the collision occurred. *Held,* that the question of negligence on the part of the defendant and contributory negligence on the part of the plaintiff were questions of fact for the jury, and it was error for the court below to sustain a demurrer to such evidence."

2. As to the applicability of the doctrine of the last clear chance the court held in the body of the opinion as follows:

"On the second proposition we are satisfied, as the case now stands, the doctrine of last clear chance or the humanitarian doctrine, as it is called by Mr. White in his work on Personal Injuries on Railroads (section 398), has no application to it. The admitted facts do not bring it within the rule laid down by this court in *A., T. & S. F. Ry. Co. v. Baker,* 21 Okla. 51, 95 Pac. 433 [16 L. R. A. (N. S.) 825]. We think the statement of the rule quoted approvingly in *Railway Co. v. Baker, supra,* from *Highland Ave. & B. R. Co. v. Sampson,* 91 Ala. 560, 8 South. 778, is the correct one, and are constrained to adhere to it in the case at bar. The rule laid down in the Highland case is to the effect that: 'If plaintiff, injured in a collision at a railroad crossing, used due diligence after discovering his peril, he can recover, though he was negligent in not stopping and listening, provided defendant, after seeing the danger failed to use due care.' In the case at bar there was no evidence tending to prove that the engineer in charge of defendant's engine discovered the peril of the plaintiff until the accident occurred. The mere fact that the engineer may have seen the plaintiff approaching the track in a covered wagon would not necessarily put him on his guard as to the peril of the plaintiff. The engineer has the right to presume that a person thus approaching the track has not omitted the ordinary precautions imposed upon him by law, and will stop in time to avoid an injury. But when the engineer sees the plaintiff approaching the track, apparently unconscious of his danger or unable to extricate himself therefrom, the humanitarian doctrine requires the engineer to exercise reasonable care and prudence to avoid injuring him. In other words, he may not, without incurring civil liability, deliberately run down and kill or seriously injure a person so situated, although it may have been shown that his negligence contributed to the injury."

Remembering that the two main points presented in this appeal were the ones considered in the former opinion as above quoted, the rule announced in *S. C. of W. of W. v. Bridges,* 37 Okla. 430, 132 Pac. 133, "All questions of law determined in a

former appeal become the law of the case, both for the trial court and this court on appeal, in a second hearing, providing the facts presented in the second hearing are substantially the same as presented at the first hearing," becomes of first importance. Other cases announce the rule. *Okla. City Elec. G. & P. Co. v. Baumhoff,* 21 Okla. 503, 96 Pac. 758; *Met. Ry. Co. v. Fonville,* 36 Okla. 76, 125 Pac. 1125; *A., T. & S. F. Ry. Co. v. Baker,* 37 Okla. 48, 130 Pac. 577; *In re State Bonds,* 40 Okla. 145, 136 Pac. 1104.

So both sides in this case, evidently fully appreciating the above rule of law, are seeking, the railroad company to show that the new facts developed take the first point out of the former decision, and the plaintiff contending that the new facts developed take the second point out of the former decision; therefore in this situation it will be necessary to examine: First, whether or not there is a change in the facts relative to plaintiff's going upon the crossing of such a material and substantial character as to render the former holding, that they involved a question for the jury, no longer controlling. On this point the railroad company claims that, through the introduction of a map describing the physical conditions as to the right of way, the crossing and obstructions on the right of way, and the evidence explaining the same, it is clearly shown that if the plaintiff looked and listened for the trains when 50 feet from the crossing, the section house would not have obstructed his view down the track in the direction from whence the train was approaching. As a mathematical proposition this is perhaps true at the exact point of 50 feet, but it is not true at a slightly greater distance from the crossing, and if the plaintiff was a few feet further from the crossing than 50 feet, as approximated in his testimony at both trials, the law of the case as announced in the former opinion would still apply and control. It must be obvious that when a witness, traveling in a wagon, gives his estimate as to how far he was from a certain point at a given time, as to the distance it is, at most, an approximation, intended, of course, to be as accurate and correct as the witness could determine under the circumstnces, but neither the jury nor the court would un-

derstand that the distance stated would be accurate to the extent of a few inches or feet either more or less. We think the facts on the first point, *i. e.*, the manner of plaintiff's approaching the crossing, are so substantially similar to those considered in the first appeal that the decision there rendered was controlling at the second trial, and that this phase of the case was for the jury.

2. On the second point, the applicability of the last clear chance doctrine, the plaintiff, to take the case out of the former decision, introduced defendant's engineer; and it is now claimed that with the aid of his testimony a case of discovered peril and failure to use ordinary care thereafter is presented, and that the court was right in submitting this question to the jury. To show this, plaintiff quotes from the testimony of the engineer as follows:

"I was about 60 feet east of the crossing when I put on the air. I put on the air because the fireman hollered to me that there was a team going on the crossing. I tried to stop the train so as to keep from striking the team. The fireman hollered to me; yes, sir, told me there was a team going on the crossing."

On cross-examination this witness testified:

"I was on the right-hand side of the cab or engine. I did not have any knowledge that there was anybody driving on the track until the fireman told me. I couldn't see on account of the boiler obstructing my view. I set the bell ringing about 80 rods east of that crossing. Q. About what was the speed of your train at the time the fireman said to you there was a man about to cross, a team about to cross? A. Well, I had just previously shut off the steam, and the engine was drifting at the time the fireman hollered or called my attention that there was a team coming. The speed of the train was about twenty miles an hour. I applied the air about 50 feet from the crossing. The engine would have been about 300 feet west of the crossing when it stopped. I think that was a very good stop for a train of that size, equipped as it was. I whistled for the crossing that Mr. Clark was struck on, about 80 rods east of the crossing. The engineer is required by the rules of the company to keep a look ahead for any obstruction on the track. I did that of course in this case, and I was looking out of that cab window all the time,

looking ahead all the time after I whistled down there for the station. I didn't see Mr. Clark nor his wagon. When I whistled down there a half mile from the station I could see down the track all the time; yes, sir. When the fireman said for me to look out, I was going to hit that man on the track, I immediately applied the brakes. The train commenced slowing the minute the brakes were set. I don't remember whether I used sand or not. It was a dry rail, and we didn't need any sand as to that. We do use sand on a dry rail occasionally."

It is not seriously contended that this evidence shows, from the language used, that the engineer in fact discovered plaintiff in a position of peril in time to have avoided the collision; but it is argued, quite ingeniously, that his evidence, showing that his engine was within 60 feet of plaintiff when he first saw him, is not true. This is predicated on the other statement that the engineer was, for a long distance back, looking ahead on the track; therefore it is argued that the physical facts and the evidence, harmonized in the light of these facts, show that plaintiff must have been seen at such time that the use of ordinary care would have averted the injury. We cannot believe the contention sound. If the law were such that, notwithstanding plaintiff's negligence, defendant would be under the duty toward him of reasonable care, when his peril was discovered, *or when it might have* been discovered, the position would be tenable. But this is not the law. When the plaintiff negligently puts himself in a place of danger, the duty of defendant to use ordinary care to protect him in the dangerous place he has assumed begins when his position and consequent peril are discovered, not when the position and peril might have been discovered. See the following decisions: *A., T. & S. F. Ry. Co. v. Baker,* 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; *Id.,* 37 Okla. 48, 130 Pac. 577; *Clark v. St. L. & S. F. Ry. Co.,* 24 Okla. 764, 108 Pac. 361; *Okla. City Ry. Co. v. Barkett,* 30 Okla. 28, 118 Pac. 350; *St. L. & S. F. R. Co. v. Kral,* 31 Okla. 624, 122 Pac. 177. The last two cases are to the exact point.

Besides, we do not think that the physical facts indicate that the engineer saw plaintiff sooner than he states. Plaintiff was approaching from the south. The train was going west. The

engineer was on the right side in the cab. The boiler obstructed his view looking towards the south side of the crossing. The fireman, who was in a position to see the team going onto the crossing, warned the engineer, who saw the situation, he says, when within 60 feet of plaintiff, and he applied all means of stopping the train, and it immediately began to stop, but struck the wagon before it cleared the track. So far as the proof shows, and we have no right to go beyond it into the field of speculation, the engineer did all that it was possible to do after discovering the presence and peril of plaintiff. We do not think the new evidence introduced took the case out of its law as stated in the former opinion. This being true, the court erred in submitting this phase of the case to the jury.

The case should be reversed and remanded for a new trial.

By the Court: It is so ordered.