## LUSK et al., RECEIVERS OF ST. LOUIS & S. F. R. CO. v. HALEY.

No. 9230—Opinion Filed May 27, 1919.

Rehearing Denied July 29, 1919.

(Syllabus by the Court.)

### Appeal and Error—Evidence—Instructions—Harmless Error—Railroads—Personal Injuries.

Record examined and held: (1) That there was sufficient evidence to take the case to the jury on the merits; (2) that the instructions given by the court state the law with substantial accuracy and sufficiently cover the issues joined by the pleadings and proof; (3) that in the opinion of the court it does not appear that any of the errors complained of based upon the ground of misdirection of the jury or the improper admission or rejection of evidence, or of error in any matter of pleading or procedure, have probably resulted in a miscarriage of justice or constitute a substantial violation of any constitutional or statutory right.

Error from District Court, Murray County; F. B. Swank, Judge.

Action by Anna Haley against James W. Lusk and others, receivers. Judgment for plaintiff, and defendants bring error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and J. H. Grant, for plaintiffs in error.

Giddings & Giddings, for defendant in error.

KANE, J. This was an action for damages for personal injuries resulting in death, commenced by the defendant in error, Anna Haley, plaintiff below, widow of the decedent, against James W. Lusk, W. C. Nixon and W. B. Biddle, receivers of the St. Louis & San Francisco Railroad, a corporation, plaintiffs in error, defendants below. Hereafter, for convenience, the parties will be designated "plaintiff" and "defendant," respectively, as they appeared in the trial court.

Upon trial to a jury there was a verdict for the plaintiff in the sum of $20,000, upon which judgment was duly rendered, and to reverse which this proceeding in error was commenced. The grounds for reversal relied upon by counsel for the defendants are summarized in their brief as follows:

1. Error of the court in overruling the motion of the defendants to direct verdict against the plaintiff, at the close of the evidence.

2. Error of the court in excluding competent and material evidence offered by defendants.

3. Error of the court in admitting incompetent evidence on behalf of the plaintiff.

4. Error of the court in giving to the jury instructions numbered 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, and in giving each of said instructions to the jury.

5. Error of the court in refusing to give to the jury instructions requested by the defendants, numbered from one to seventeen, inclusive, and in refusing to give each of said instructions to the jury.

6. Excessive damages awarded by the jury, which appear to have been given under the influence of passion and prejudice.

7. Misconduct of counsel for plaintiff to the material prejudice of defendants.

It seems that the deceased was an employe of the Pioneer Telephone & Telegraph Company, who, for several weeks prior to his injury, had been engaged in cooking for a gang of men engaged in doing reconstruction work for that company upon or near the right of way of the railway company between the towns of Stroud and Depew, the work camp being situated upon or near the right of way some two and one-half miles northwest of the latter point.

On the evening of December 18, 1915, the deceased went from the work camp to Depew for the purpose of purchasing medicine and other necessaries for his wife, who worked with him in the camp, and shortly after midnight he started to walk back to camp upon the tracks of the railway company, in company with his brother, Martin Haley, and one Gilbert, who were also telephone company employes. Just before the three men had reached their destination, according to the theory of the plaintiff, they heard the whistle of a passenger train which was rapidly approaching from their rear, whereupon they immediately attempted to get off the track, but before the deceased could reach a place of safety he was struck by the locomotive of the train and killed.

Upon the trial and in their briefs counsel for the respective parties devoted considerable time to the development and discussion of the question whether the deceased was upon the track of the railway company as a licensee or as a mere trespasser, but, as the only additional duty the defendant would owe the deceased if it were conceded that he was a licensee would be to keep a lookout for his presence, and, as the engineer and fireman testified without contradiction that they were keeping a sharp lookout for any one who might be upon the track whether licensee or trespasser, we are unable to perceive how this question is very material to the consideration of the case upon its merits. The case, it seems to us, turns on the question whether there was any evidence tending to show that the engineer and fireman saw the plaintiff in a place of peril in time to save him from injury by the exercise of due care. The engineer testified that he was keeping a constant lookout on the night of the accident and that with the headlight he was using he could see for seven or eight telegraph poles ahead of his train, but that he did not see the deceased until after the accident on account of a sharp curve in the track at the point where the accident occurred. The fireman testified that he also was keeping a careful lookout; that he discovered the three men walking single file in the middle of the track when his locomotive was about five hundred feet from them. The following is an excerpt from his testimony as to what happened after that:

"Q. Well, now what did they do, if anything, just after you saw them about five hundred feet ahead of you? A. Well, the one that was in the middle of the track and the one behind got off, and went on down

the dump and the other fellow seemed to be in the clear until we were right near close to him and it seemed that he either got closer or stopped closer to the track and staggered that way. Q. Now, when he moved a little closer to the track, instead of going down the dump with the others, how far were you from him? A. Well, we were, oh, probably—I couldn't hardly approximate the distance. That was just as the headlight was leaving. Q. Well, how close was he to the engine? A. He was real close. It was probably twenty or thirty feet. Q. Now, from that time when you saw that he was staggering or getting nearer the tracks instead of going down the bank, state whether or not you had time to inform the engineer or do anything to stop the train before you struck him. A. No, sir; I did not. Q. What did you do when you saw him? A. I informed the engineer as quick as I could. Q. What did he do? A. He stopped the train as quick as possible."

The first contention of counsel for the defendants is based upon the assumption that this positive evidence of the engineer that, although he was keeping a sharp lookout, he did not see the deceased until after he was hit, on account of the curve, and of the fireman that after the deceased reached a place of safety he staggered back toward the track when the locomotive was almost upon him, and was hit, is uncontradicted. Of course, if this contention is well taken the trial court should have directed a verdict for the defendants. On the other hand, it is contended by counsel for the plaintiff that, conceding that the engineer and firemen were looking, as they testified they were, there being other evidence tending to show that the deceased and his companions were walking single file in the center of the track which was perfectly straight for a distance of a half or three-quarters of a mile back of them, the physical facts as well as the positive testimony of witnesses contradict the positive statements of the engineer and fireman that they did not see the deceased in a place of peril. If there is any evidence reasonably tending to support this theory, of course the court was right in sending the case to the jury, for both parties concede that:

"A railroad company in the operation of its trains, while it does not owe an unauthorized person upon its tracks the duty to use ordinary care to discover such person on its tracks or to discover his dangerous position, must, after the discovery of his peril, use ordinary care to avoid doing him injury." A., T. & S. F. R. Co. v. Miles, 69 Oklahoma, 170 Pac. 898; A., T. & S. F. R. Co. v. Clark, 42 Okla. 638.

The engineer and fireman do not claim that, outside of keeping a lookout for anyone who might be upon the track, they exercised due care or any care at all to avoid injuring the decedent; their contention being that no further care was necessary on their part: First, for the reason that the engineer, although he kept a sharp lookout, could not see the deceased on account of the curve, and. second, according to the testimony of the fireman, the deceased, having reached a place of safety, was apparently in no danger.

Now, let us examine the evidence relied upon by counsel for the plaintiff for the purpose of ascertaining in what particulars, if any, it contradicts the evidence of the engineer and fireman.

Two witnesses, the companions of the deceased, testified that the track was perfectly straight for a distance of three-quarters of a mile back from the place where the deceased was hit; that the deceased was hit just before he reached the curve, which the engineer claims prevented him from discovering the presence of the deceased upon the track, and that there was nothing in the way of the engineer and fireman seeing the deceased. All of the witnesses concede that if the track was straight at the place where the injury occurred as these witnesses testified, the deceased could have been seen. The engineer himself testified that he would have seen the deceased if the track was straight. but that he did not see him because of the curve. It seems to us that this evidence flatly contradicts the testimony of the engineer in at least two important particulars: (1) That the accident occurred upon a curve; and (2) that the engineer, who was admittedly looking, did not see the deceased upon the track. The fireman testified that he saw the deceased on the track at a distance of five hundred feet, at which distance he sought and reached a place of safety. There is conflict between his testimony and the testimony of the witnesses for the plaintiff in that they testified that they did not see or hear the train or get off the track until it whistled for a crossing a short distance from them, when they immediately sought places of safety. If the engineer and fireman or either of them saw the deceased, then it was their duty to use ordinary care to avoid injuring him, after becoming aware of his perilous position. A., T. & S. F. R. Co. v. Baker, 21 Okla. 51; A., T. & S. F. R. Co. v. Clark, 42 Okla. 638.

There is some contention to the effect that even if there was evidence tending to show that the engineer or fireman saw the deceased walking on the track, it did not necessarily follow that he was in a perilous position, as the presumption was that he would

get off the track in time to avoid injury. The parties were engaged in a perilous undertaking from the moment they started on their midnight journey from Depew to their camp. They were in a perilous position from whatever time the evidence tends to show the engineer or fireman discovered them on the track a half or three-quarters of a mile ahead of the rapidly approaching train, and from that moment the duty to use ordinary care not to injure them commenced. Of course, the engineer or fireman would be justified in presuming that the parties would retire to a place of safety if it appeared that they knew the train was approaching, but in the case at bar there was no signal or warning given of the approach of the train and there was nothing in the evidence to show that the deceased or his companions were conscious of its approach, the evidence of the surviving parties being to the effect that they were not, until, in the case of the deceased. it was too late to avoid injury by retiring to a place of safety. We think in these circumstances the trial court was right in submitting the case to the jury.

The next assignment of error is based upon the action of the court in sustaining an objection to certain questions asked witness Donavan, whose evidence was offered upon the question whether the deceased was a licensee or a trespasser. As the difference between the duty a railway company owes a licensee and a trespasser has been hereinbefore pointed out and it is conceded that the engineer and fireman were keeping a sharp outlook, we are unable to perceive the materiality of this evidence or any harm which could be caused by its exclusion.

The next error is based upon the action of the court in admitting certain evidence in behalf of the plaintiff, upon the ground that it was incompetent. One of the questions and the answer thereto are as follows:

"Q. Was there anything to prevent the engineer of said train from seeing you on the track? A. No, sir."

Another question asked:

"Q. Do you know whether or not that night while you boys were walking northeast on the track as you have described, there was anything in the way of an obstruction that would prevent the engineer from seeing what was upon the track northeast of him?"

Another was:

"Q. Did he ring the bell or sound the whistle after he got over the crossing before he struck Haley? A. No, sir."

It is claimed that these questions and several others of like import are incompetent because the railway company was not under

obligation to keep a lookout for the deceased nor to sound the whistle or ring the bell except at the usual places required by law or the rules of the company. We think the first question objected to and questions of that class were competent as tending to show whether the engineer saw the deceased upon the track, and in view of our conclusion that there was evidence reasonably tending to show that the engineer did discover the deceased in a place of peril, the evidence as to ringing the bell and sounding the whistle, etc., was competent on the question of due care.

Whilst in their next assignment of error counsel complain of the refusal of the trial court to give the jury requested instructions numbered 1 to 17, inclusive, they rely, in their brief, upon error in refusing to give requested instructions numbered 4, 5, 6, 8, 12, 15, and 16. We have examined these instructions, and find that where they state the law correctly they have been covered in substance by the instructions given by the court on its own motion. On the whole. we are perfectly satisfied that the trial court committed no harmful error in refusing any of the instructions requested.

The same may be said also of the instructions given by the court and excepted to by the defendant. The trial court seems to have covered the various questions of law arising out of the issues joined by the pleadings and the proof with substantial accuracy. This is all that is required.

We have examined the record carefully and are unable to find any evidence that the damages awarded by the jury were given under the influence of passion and prejudice. Whilst the verdict is liberal, in view of the deceased being a young man with a long expectancy, we think the evidence reasonably tends to show that his loss to the plaintiff is no more than justly compensated for by the verdict returned by the jury.

The misconduct of counsel complained of in the next assignment of error arose as follows: It seems that during the course of the trial counsel for the plaintiff missed certain exhibits which, by stipulation of counsel, were to be attached to certain depositions taken on behalf of the defendants. Upon making this discovery counsel for the plaintiff charged counsel for the railway company with bad faith in not attaching the exhibits and in argument charged that the absence of the exhibits indicated a conspiracy between the telephone company and the railway company against the plaintiff. It subsequently developed that the exhibits

were attached to the depositions as per stipulation of counsel and that they had become misplaced by inadvertence on the part of counsel for the plaintiff. Of course, it is apparent at once that this circumstance furnished no basis whatever for the statement of counsel. On the other hand, the charge of conspiracy between the two companies seems to us to be so obviously without any foundation to support it that it is difficult to believe that the mere statement of counsel could possibly influence the jury on that point or work any injury to the defendant. In our judgment the case on its merits turns upon whether the jury believed the plaintiff's witnesses or the defendant's witnesses as to the respective theories of their case. The evidence, as it appears to us, being sharply conflicting, the verdict of the jury in favor of the plaintiff establishes liability on the part of the railway company. In its last analysis the record presents but few disputed questions of fact for consideration, and when these are found in favor of the plaintiff the case becomes one of considerable simplicity. Being satisfied that the findings of the jury on the disputed facts are reasonably supported by the evidence, we are not at liberty to set aside the judgment rendered or grant a new trial on the ground of misconduct of the jury or the improper admission or rejection of evidence or as to error in any matter of pleading or procedure, unless, in our opinion, after an examination of the entire record it appears that the errors complained of have probably resulted in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right. Section 6005, Rev. Laws 1910.

It not appearing that any of the errors complained of, belonging to the class mentioned in the statute, have probably resulted in a miscarriage of justice, the judgment of the court below must be affirmed.

All the Justices concur.