**ELTON et al. v. SCHAFF, Receiver.**

No. 10002—Opinion Filed April 26, 1921.

Rehearing Denied Aug. 31, 1921.

(Syllabus.)

1. **Trial—Demurrer to Evidence—Effect.**

A demurrer to the evidence admits all the facts which the evidence reasonably tends to

prove, and all the inferences and conclusions which may reasonably and logically be drawn therefrom, and the court will treat as withdrawn all the evidence which is most favorable to the demurrant.

### 2. Negligence—Question for Jury.

When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.

### 3. Master and Servant—Action for Negligent Death of Railroad Conductor—Demurrer to Evidence.

From an examination of the record, held. that it was error for the trial court to sustain a demurrer to the evidence of the plaintiffs.

Error from District Court, Craig County; Preston S. Davis, Judge.

Action by Malinda Elton and another against Charles E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company, for damages for negligent death of husband of plaintiff named. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

C. W. Prince, E. A. Harris, J. N. Beery, J. E. Westfall, and Riddle, Bennett & Wilson, for plaintiffs in error.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for defendant in error.

McNEILL, J. This action was commenced in the district court of Craig county by Malinda Elton, wife of Harry W. Elton, deceased, and James J. Shepard, administrator of the estate of Harry W. Elton, deceased, against Charles E. Schaff, receiver of the Missouri, K. & T. Railway Company, a corporation, to recover damages for the death of Harry W. Elton, who while in the employ of the company and in discharge of his duties was run over by the receiver's train at Calhoun, Missouri, and killed.

The defendant answered by way of general denial, and pleaded contributory negligence. Upon trial of the case to the jury, the plaintiffs introduced their evidence, and defendant demurred to the same, which was sustained, and the court dismissed the plaintiffs' petition and rendered judgment in favor of defendant and against the plaintiffs.

For reversal, the first question presented is whether the court erred in sustaining the demurrer to the evidence of plaintiffs. The circumstances connected with the death of the deceased may be stated as follows: Harry W. Elton was a conductor in charge of a freight train of defendant railroad running from Sedalia to Nevada, Mo., and at the time of his injury was at Calhoun, Mo., having reached there at about 10:50 o'clock a. m., and after unloading certain freight his train was standing on the sidetrack waiting before proceeding on the trip to Nevada for two trains coming from the opposite direction to pass through Calhoun, one a freight train and one a passenger train. The deceased was in the depot and the freight train passed through Calhoun without stopping, and almost immediately thereafter the deceased walked out of the depot almost in a straight line toward the main track, which was about 12 feet from the door, and in the direction where his freight train was standing. There was a crowd on the platform, and deceased walked swiftly through the crowd and stepped on the main track of the railroad immediately in front of the passenger train, and was struck and carried upon the pilot a short distance, and then rolled off of the pilot under the train, and was run over, receiving severe injuries from which he died in a short time. The train that struck deceased was running from eight to 12 miles an hour at the time, and ran a distance of approximately 50 feet after striking the deceased before stopping.

The petition alleged numerous acts of negligence, and plaintiffs in error contend the evidence disclosed certain acts of negligence sufficient to submit the case to the jury. It is first contended that the station agent at the town of Lewis, a station some four miles south of Calhoun, had violated one of the rules of the railroad company by permitting the passenger train to leave the town of Lewis about five minutes after the freight train had departed; it being contended that the rules of the railroad company provided that one train should not depart from a town until the preceding train had departed ten minutes; it being contended that the agent at Lewis was negligent in permitting this to occur. The rules provide, however, that it is unnecessary for trains to run ten minutes apart, and in entering stations they may close up the distance, and there is no rule as to how close one train shall enter the station behind the other so long as it is a safe distance. We can see no causal connection between the train leaving Lewis in violation of the rule and the injury of deceased, for the reason the train in entering the town of Calhoun, where the injury occurred, was violating no rule of the company.

It is next contended that the brakeman of the train of which the deceased was conductor had given a signal to the engineer of his train to move the train forward and his train was moving, and this caused the de-

ceased to hurry, and in his haste he stepped in front of the train. The evidence disclosed that the deceased walked out of the depot, perhaps swiftly, and stepped in front of the train. There is no evidence that the conductor saw his own train moving. We think there was no causal connection between the act of negligence complained of and the train striking deceased.

If the court committed error in sustaining the demurrer to the evidence, it must be because the evidence of the plaintiffs was sufficient to submit their case to the jury upon the theory that the engineer did not have complete control of the train as it was entering the station, or the brakes were not in proper condition, or upon the theory of the last clear chance. In determining this question the principle of law applicable to such a case in this jurisdiction is stated as follows:

"A demurrer to the evidence admits all the facts which the evidence reasonably tends to prove, and all the inferences and conclusions which may reasonably and logically be drawn therefrom, * * * but the court will treat as withdrawn all the evidence which is most favorable to the demurrant." Felt v. Westlake, 68 Oklahoma, 174 Pac. 1041.

This court, in the case of Wichita Falls & N. W. R. Co. v. Groves, 81 Okla. 34, 196 Pac. 677, held as follows:

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury." Grand Trunk R. Co. v. Ives, 144 U. S. 408.

The evidence is quite voluminous, but it will only be necessary to refer to a small portion of the evidence and consider the same in the light of the principle of law above announced. There is evidence in the record to disclose that the train after striking deceased ran about 50 feet before stopping. There is evidence also to disclose that when deceased came out of the depot door he proceeded almost straight north to the track, and if he varied in his direction, it was westward. There was evidence that as the train entered the town of Calhoun it was traveling on a slight up-grade of about two per cent.

The engineer, Mr. Kinsey, testified concerning how the train was equipped, the kind and character of brakes, and they all were in proper working order. The engineer also gave the following testimony:

"Q. When was the first that you saw Mr. Elton? A. Just before the front of the engine, or just about as the front of the engine was coming by the passenger end of the depot, I saw a head coming out from the door like he was coming from the door passing some passengers on the platform. I could just see his head, and by working with him so long, I knew it was Mr. Elton. Q. All right; what went with this head you recognized as that of Mr. Elton? A. In just another second or two he stepped by the passengers lined up on the platform, and the next step he took was over the rail, and immediately in front of the engine, he went out of my vision at that point, the engine was so close to him. Q. At that time, at what rate of speed were you traveling? A. Possibly 10 or 12 miles an hour. I doubt if it was quite that fast. Q. Well, what makes you doubt that it was that fast? A. On account of making such a short stop afterwards. Q. How fast might you have been going? A. May have been as slow as eight miles an hour. Q. What did you do when you saw Mr. Elton there coming toward the track? A. When I saw him coming? Q. Yes. A. I was making my station stop then. Q. What did you do when you saw him step on the track? A. I immediately went into emergency, and brought the train to a standstill as fast as possible."

He was also asked the following question and gave the following answer:

"Q. Do you know whether by going into emergency, at that time, you got any higher braking power than you already had? A. I don't believe we got a particle higher."

Mr. Fink testified that he was present at the east end of the depot, or about 20 feet east of the door that Mr. Elton came out of, and that as the train passed Mr. Fink going east Mr. Elton was on the pilot, and just as the train was passing the witness Mr. Elton rolled off the pilot and under the train.

Mr. Huskey, an engineer residing at Kansas City, testified that he was familiar with the kind and character of engine used and the kind and character of brake and appliances upon the train, and with a train equipped such as the passenger train was, traveling at a rate of speed from 10 to 12 miles per hour, that if the emergency had been applied, the train would have stopped within about 12 feet. Several other railroad men and engineers testified that with a train equipped as the one in the instant case, when running at a speed from eight to 12 miles per hour, if the emergency was applied, the train would stop within from eight to 20 feet.

Considering this evidence in the most favorable light in favor of the plaintiffs and withdrawing from the consideration of the court that evidence, which is not set out

herein, that is more favorable to the railroad company, it would seem that the inference and logical conclusion to be drawn from the evidence above stated would be, if the engineer had applied the emergency brake at the time of striking the deceased, the train would have stopped at a distance of from ten to 20 feet, and at a time the deceased was upon the pilot. That being true, while the train would have struck the deceased, it would not have run over him. We think this evidence is sufficient to support the conclusion that the engineer did not apply the emergency brake when he stated he did, or if he did apply the emergency brake, the brakes were not in proper condition. This is the most favorable light that this evidence can be considered in favor of the plaintiffs, and when considered in that light, it is sufficient to submit the case to the jury.

It was error for the trial court to sustain a demurrer thereto. The case is reversed, and remanded, with directions to grant plaintiffs in error a new trial.

HARRISON, C. J., and PITCHFORD, ELTING, and NICHOLSON, JJ., concur.