### ST. LOUIS-SAN FRANCISCO RY. CO. et al. v. BRYAN.

No. 14434—Opinion Filed April 7, 1925.

Rehearing Denied July 7, 1925.

(Syllabus.)

**1. Negligence — Contributory Negligence — Doctrine of "Last Clear Chance."**

The doctrine of "last clear chance" is recognized by the courts as an exception to the general rule that the contributory negligence of the person injured will bar a recovery, without reference to the degree of negligence on his part; and, under this exception to the rule, the injured person may recover damages for an injury resulting from the negligence of the defendant, although the negligence of the injured person exposed him to the danger of the injury sustained, if the injury was more immediately caused by the want of care, on the defendant's part, to avoid the injury, after discovering the peril of the injured person.

**2. Evidence —Weight—Circumstantial Evidence.**

A jury may, if they so decide, accept circumstantial evidence upon one side, and reject positive testimony presented on the same point by the other side.

**3. Railroads—Liability for Injury at Crossing—Last Clear Chance.**

"The last clear chance" doctrine applies to render a railway company liable for an injury at a crossing to the deceased, whose peril the engineer appreciated, though the deceased's contributory negligence continued up to the moment of his injury.

**4. Negligence — "Contributory Negligence."**

"Contributory negligence" is an act or omission on the part of the plaintiff amounting to want of ordinary care which, concurring or co-operating with the negligent act of defendant, is the proximate cause of the injury complained of, and necessarily presupposes negligence on the part of the defendant.

**5. Railroads—Speed of Trains—Regulation by Municipality.**

Sections 3491 to 3495, Comp. Stat. 1921, giving the Corporation Commission jurisdiction over railroad crossings, do not deprive a municipality of the right to regulate the rate of speed of railroad trains and engines within its limits.

**6. Trial—Instructions—Refusal of Requests Covered in Charge.**

Where it appears that instructions tendered by attorneys and refused by the trial court were in substance and effect given by the trial court in its general instructions to the jury, the refusal to give instructions asked for does not constitute reversible error.

**7. Appeal and Error — Conclusiveness of Verdict—Excessive Recovery for Personal Injury.**

In an action for personal injury the jury is charged with the duty to fix the amount of damages, and its verdict will not be set aside for excessive damages, unless it clearly appears that the jury committed some gross and palpable error or acted under some improper bias, influence, or prejudice, or has totally mistaken the rules of law by which the amount of damage is fixed.

Error from District Court, Kiowa County; T. P. Clay, Assigned Judge.

Action by Ruth Bryan against the St. Louis-San Francisco Railway Company and P. P. Palmer for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Evans, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiffs in error.

James R. Tolbert and Embry, Johnson & Tolbert, for defendant in error.

PHELPS, J. On the 7th day of October, 1921, Robert E. Bryan, while attempting to drive a wagon across the tracks of the St.

Louis-San Francisco Railway Company at the intersection of said tracks and Third street in Hobart, Okla., was struck by a motor train and almost instantly killed. Suit was filed by Ruth Bryan, his widow, on behalf of herself and four minor children, against the railway company and P. P. Palmer, engineer of the train. The parties will be referred to as in the trial court.

The petition alleges, in substance, that the accident was caused by the negligence of the defendants in that they ran the train over the crossing at a dangerous rate of speed of 20 miles per hour; they failed to give any kind or manner of signal of its approach; they failed to use ordinary care to prevent the accident; they operated and were operating the train in excess of the speed prescribed by the ordinances of the city of Hobart; the motor car was defective and worn out and the brakes were defective, and that the defendant Palmer was incompetent and unskilled. Defendants answered, denying these allegations, and alleged that the deceased was guilty of contributory negligence. Plaintiff replied by general denial.

The record discloses that the deceased, Robert E. Bryan, on said date was driving his wagon and team east on Third street within the corporate limits of Hobart, Okla., traveling toward the crossing where Third street intersects the railway's tracks, which run north and south through the city. The wagon contained two bales of cotton, on one of which deceased was sitting. The first track before reaching the main line was a track known as the house track, which was full of cars, except for the crossing, and because of these cars and certain buildings deceased was unable to see an approaching train until he had passed over the house track. From some little time prior to and at the time of the accident, there were two locomotives south of the crossing, one of which had been whistling and switching cars, and there was evidence that the deceased was looking south when struck. The motor car train was composed of two cars, the engine proper and a trailer, and was about 100 feet long in all, and was carrying passengers, mail, and baggage. It was propelled by motors, the power being furnished by a dynamo driven by a gasoline engine, and made very little noise when running. On the date of the accident the train was on time, and whistled at the water tank, about a half mile north of the depot. The evidence was contradictory as to whether the whistle was blown or the bell rung after it passed the tank. Several witnesses testified that neither was done. The testimony showed that the train was traveling at a speed of from ten to twelve miles an hour when it struck the deceased, and Palmer, the engineer, testified that he was going not more than 20 miles an hour when he first saw the deceased approach the track; that at that time he was within 75 feet of the crossing and the deceased was 25 feet from it. There was evidence that the train ran approximately 100 feet past the crossing after striking the deceased. Therefore, from this testimony, it appears that the train ran about 175 feet after the deceased was seen by the engineer before coming to a stop. Witnesses who were on the train at the time testified that there were two jolts, close together, the first occurring approximately at the Third street crossing when the brakes were applied, and the second when the motor car struck deceased's wagon and team. One witness testified that at that time they were traveling about 12 or 15 miles an hour and ran 70 or 80 feet after the brakes went on, which was approximately at Third street. There was evidence that this train traveling 15 miles an hour ought to stop within 25 to 30 feet after the application of the brakes. The motor car struck the wagon and team of the deceased, knocked him from the wagon, broke the leg of one of the horses and dragged the other under the train about 100 feet south of the crossing, where the train stopped. The deceased died shortly after the accident, while on the way to the hospital, without regaining consciousness.

The jury, at the instance of counsel and under instruction of the court, were taken by the bailiff and viewed the premises where the accident occurred and a photograph of the place and of the car which caused the accident were introduced in evidence at the trial. At the conclusion of the trial the jury returned a verdict for the plaintiff in the sum of $12,000. Judgment was rendered thereon, from which the defendants have prosecuted this appeal.

The defendants urge various assignments of error, particularly in giving instructions Nos. 4 and 11; in admitting in evidence ordinance No. 157 of the city of Hobart and in giving instruction No. 8 with reference thereto; in refusing defendants' requested instruction No. 5; and also that the verdict of the jury was excessive and based upon incompetent testimony.

Defendants contend that the court erred in giving instruction No. 11, which, in our

judgment, properly submitted the doctrine of the last clear chance. This rule has been recognized by this court as an exception to the general rule that contributory negligence of the person injured will bar a recovery. It declares that the injured person may recover damages resulting from the negligence of the defendant, although he himself be guilty of contributory negligence, if the injury was caused more immediately by want of care on the defendant's part to avoid the injury after discovering the peril of the injured party. A., T. & S. F. Ry. Co. v. Baker, 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; Oklahoma City Ry. Co. v. Barkett, 30 Okla. 28, 118 Pac. 359; St. L. & S. F. Ry. Co. v. Clark, 42 Okla. 638, 142 Pac. 396; Lusk v. Haley, 75 Okla. 206, 181 Pac. 727; Thrasher et al. v. St. L. & S. F. Ry Co., 86 Okla. 88, 206 Pac. 212. And where, under the facts of the particular case, there is a question whether the defendant exercised reasonable precautions to prevent an accident, after discovering the perilous position of the injured party, the doctrine of the last clear chance should be submitted to the jury under proper instructions. Thrasher et al. v. St. L. & S. F. Ry. Co., supra.

It is the contention of the defendants here that the evidence did not disclose such facts as justified the application of the rules above set out. With this contention, we do not agree. Several witnesses testified that neither the bell was rung nor the whistle blown after the train left the water tank, one-half mile north of the crossing. This evidence was contradicted by the engineer and other witnesses. In M., K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753, and W. F. & N. W. Ry. Co. v. Groves, 81 Okla. 34, 196 Pac. 677, this identical question arose, and it was there held that it was a question of fact for the jury to determine whether these signals had been given. The engineer, Palmer, testified that he was traveling at a speed of not more than 20 miles an hour when he saw the deceased approaching the track; that at that time the train was 75 feet from the crossing and the deceased 25 feet from it. He said that he realized then that there was going to be an accident and put on his brakes immediately. The evidence showed that the train ran more than 100 feet after the accident, or more than 175 feet after the engineer says he saw the deceased approaching the crossing. A locomotive engineer testified that he was familiar with air brakes and that such a train running 15 miles an hour should stop within 25 to 30 feet after the brakes were applied. These circumstances may be consid-

ered inconsistent with the direct testimony of the engineer, and where the physical facts and the circumstances surrounding the occurrence tend to contradict the positive testimony, then it becomes a question of fact for the jury, and the jury may accept the evidence of the physical facts and reject the positive testimony. Reed v. Scott, 50 Okla. 757, 151 Pac. 484; C., R. I. & P. Ry. Co. v. Owens, 78 Okla. 114, 189 Pac. 171; Lusk v. Haley, supra. Here we have evidence which shows that the proper warning was not given, and evidence of facts, from which it may be said that the defendants failed to use proper care and caution after they discovered the deceased's peril. In W. F. & N. W. Ry. Co. v. Groves, supra, defendant claimed that there was no evidence to justify the giving of an instruction on the theory of the last clear chance. In that case the engineer testified that he stopped the train as soon as possible after discovering the deceased in a place of peril, and that the train could not be stopped in less than 60 to 75 feet. It was stopped within that distance, but the accident occurred. Another engineer testified that with such a train and running at the same rate of speed, the train could be stopped in 15 to 30 feet. This court held that these facts raised a proper question for the jury and that the court correctly instructed on the theory of the last clear chance. In Elton v. Schaff, 83 Okla. 27, 200 Pac. 428, and A., T. & S. F. Ry Co. v. Baker, supra, the court had before it cases involving this same point and based on facts which are identical in substance as here, and this rule was applied.

The defendants further contend that this instruction is erroneous for the reason that it did not contain a provision as to concurrent and contemporaneous negligence of the parties, it being their contention that if the plaintiff and defendants were concurrently negligent, no recovery could be had, and in order for the plaintiff to recover, some negligent act of the defendants must be shown, which occurring, after the contributory negligence of the injured party had ceased, caused the injury. We do not agree with this contention. The last clear chance doctrine applicable here contemplates a danger which the engineer, having knowledge thereof, may avoid by due care on his part. To hold that if he, having the last clear chance to avoid the injury by the exercise of due care, is excused if the injured party's negligence continues or is concurrent, is to deny the application of the last clear chance doctrine. It, in effect, would be holding that

the rule of contributory negligence would apply and be a defense under such circumstances. The failure of the engineer to perform his duty when he has knowledge of the person's peril and has the opportunity to prevent the injury by the exercise of due care, raises liability. In our judgment, the correct rule is that defendants cannot rely upon contributory negligence of the injured person as a protection where the injury was more immediately caused by the want of due care on defendants' part to avoid the injury after discovering the peril of the injured party. M., K. & T. Ry. Co. v. Smith, 97 Okla. 152, 223 Pac. 373; Okla. City Ry. Co. v. Barkett, supra; St. L. & S. F. Ry. Co. v. Clark, supra; Lusk v. Haley, supra; Thrasher v. St. L. & S. F. Ry. Co., supra; Wilson v. Ill. C. Ry. Co., 150 Iowa. 33, 129 N. W. 340, 34 L. R. A. (N. S.) 687, note; Terre Haute, etc., Co. v. Stephenson, 189 Ind. 100, 123 N. E. 785.

The court's instruction No. 4 is as follows:

"You are instructed that contributory negligence is an act or omission upon the part of the person injured, amounting to a want of ordinary care, which, occurring or co-operating with the negligent act of the defendant, is the proximate cause of the injury complained of."

Defendants contend that this instruction is erroneous. Contributory negligence is defined as that want of ordinary care, upon the part of the person injured by the negligence of another, which, combined and concurring with the negligence of the defendant, proximately contributes to the injury. Chickasha Cotton Oil Co. v. Brown, 39 Okla. 245, 134 Pac. 850. The definition as given in the instruction is laid down and approved in C., R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250. Therefore, in our opinion, the court committed no error in giving this instruction.

The defendants further contend that the court erred in admitting in evidence ordinance No. 157 of the city of Hobart, and in giving instruction No. 8 with reference thereto. The provisions of this ordinance are sufficiently set out in instruction No. 8, which is as follows:

"There has been admitted in evidence a certain ordinance No. 157 of the city of Hobart, providing that it shall be unlawful for any engineer, conductor, or other person having a railway locomotive or train of cars in charge to permit or suffer the same to be run along any track in said city at a greater rate of speed than six miles per hour. In this connection, you are instructed that if you find from a preponderance of the evidence that at the time and place deceased was injured, said locomotive and train of cars was being operated in said city and running at a greater rate of speed than six miles per hour in violation of said provision of said ordinance, and that said violation of said ordinance was one of the proximate causes of deceased's injuries and death you are then instructed that such violation of said ordinance would of itself be negligence on the part of the defendants."

Evidence was introduced to show that the intersection of Third street and the railway company's track was within the city, and that the motor train exceeded the speed limit provided for in the ordinance. It is the contention of the defendants that by chapter 53 of Session Laws 1919 (sections 3491 to 3495, Comp. St. 1921), the Corporation Commission is given exclusive control of the protection to be required at all highway crossings in the state within the corporate limits of cities and elsewhere, and that all that portion of the ordinance fixing the protection, that is to say, a speed not to exceed six miles an hour within the city limits, was null and void, because being in conflict with these statutes.

Section 4573, Comp. St. 1921 (sec. 598, Rev. Laws 1910), provides:

"The council shall have power * * * to regulate the running of railway engines, cars, * * * within the limits of said city and to prescribe rules relating thereto and to govern the speed thereof. * * *"

It is the contention of the defendants that by chapter 53, Session Laws 1919 (sections 3491 to 3495, Comp. St. 1921), exclusive jurisdiction over these matters is given the Corporation Commission, and that this exclusive jurisdiction would include the regulating of the speed of trains over said highway crossing. The first section of this act gives the commission full jurisdiction over all public highway crossings where same cross the railroad, and section 4 of said act (section 3494, Comp. St. 1921) provides:

"The Corporation Commission shall have exclusive jurisdiction to determine and prescribe the particular location of highway crossings, for steam or electric railways, the protection required, to order the removal of all obstructions as to view of such crossings, to alter or abolish any such crossings, and to require, where practicable, a separation of grade at any such crossing, heretofore or hereafter established."

A similar contention was made in the case of St. L. & S. F. Ry. Co. v. Rundell, de-

cided March 3, 1925 (No. 13304) 108 Okla. 132, 245 Pac. 491, where it was argued that section 4, supra, gave the Corporation Commission exclusive jurisdiction over crossings, and when they had not required the maintaining of a flagman or signals at crossings, that it relieved the railway company from liability. This court held that the common-law duty to provide such protection is not relieved by said statute; citing Evans v. Erie R. Co., 213 Fed. 129; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 36 L. Ed. 485; Guggenheim v. Lakeshore & M. S. Ry. Co., 66 Mich. 150, 33 N. W. 161; Barnum v. Grand Trunk Ry. Co., 148 Mich. 370, 111 N. W. 1036. The Rundell Case, supra, while not involving the exact facts as at issue here, was certainly decisive of this point. The plain words of the latter statute do not abrogate the power given the council in the former statute to regulate the speed of trains, etc., within the city limits. In Boggero v. Southern Ry. Co., 64 S. C. 104, 41 S. E. 819, the city had an ordinance limiting the speed of trains to six miles an hour within certain areas. Defendant company made the same contention as here, that by certain sections of the statute regulation of speed of trains was within the exclusive jurisdiction of the railway commissioners, and that the court erred in admitting the ordinance in evidence and in giving an instruction based on the alleged violation of it. These statutes gave the railroad commissioners general supervision of the railroads and the manner in which they are operated with reference to the security and accommodations of the public and the compliance of the corporations with the provisions of their charter and the laws of the state. The court held that these statutes did not deprive the municipalities of regulating the speed of trains within their limits. See, also, Seaboard Air Line Ry. Co. v. Smith, 53 Fla. 375, 43 South. 235. This ordinance of the city being in full force and effect at the time, the court rightfully admitted it in evidence, and there being evidence that the train was running at a rate of speed in excess of that allowed by the ordinance, properly instructed them that the running of trains in excess of that allowed by ordinance or statutes is negligence per se. C., R. I. P. Ry. Co. v. Pitchford, 44 Okla. 197, 143 Pac. 1146; Dickinson v. Cole, 74 Okla. 79, 177 Pac. 570. Also see Slick Oil Co. v. Coffey, 72 Okla. 32, 177 Pac. 915; Oklahoma Producing & Refining Corp. v. Freeman, 88 Okla. 166, 212 Pac. 742.

The further contention made by the defendants is that the trial court erred in refusing to give their requested instruction No. 5, which, in effect, would have told the jury that it was the duty of the deceased to look and listen for approaching trains before attempting to cross the track. In St. L. & S. F. Ry. Co. v. Taylor, 107 Okla. 240, 232 Pac. 414, the same instruction was requested by the defendant as here. This court held, citing Hines v. Dean, 96 Okla. 107, 220 Pac. 860, that it was the duty of the trial court to submit this theory of the defendant to the jury and error to refuse this instruction, the general instruction not stating the duty which the law imposes upon a person about to cross a railroad track. While the trial court should not instruct the jury that if a certain state of facts is found to exist, such facts constitute contributory negligence and the plaintiff cannot recover, yet it is the duty of the court, upon proper request being made, to instruct the jury as to the duty the law imposes upon the deceased and defendant, and that a breach of that duty is negligence. Hines v. Dean, supra; St. L. & S. F. R. Co. v. Tyler, supra. However, the trial court properly submitted this theory of defendants in his instruction No. 9, which fully instructed the jury as to the duty the law imposes upon the plaintiff as well as the defendants, and which instruction, construed with the other instructions, particularly instructions Nos. 4, 10, and 11, sufficiently covered this question of law, and it was not error for the court to refuse instruction No. 5. Midland Valley R. Co. v. Gibson, 94 Okla. 193, 221 Pac. 100; Hines v. Dean, supra; St. L. & S. F. Ry. Co. v. Model Laundry, 42 Okla. 501, 141 Pac. 970; C., R. I. & P. Ry. Co. v. Baroni, 32 Okla. 540, 122 Pac. 926.

The further contention of the defendant is that the verdict was excessive and based on incompetent testimony. The evidence shows that Robert E. Bryan was 26 years of age and in good health when killed; that he had a wife and four small children; that he was industrious and made a good living for his wife and children. The mortality tables show that he had a life of expectancy of 38.11 years. The jury rendered a verdict for the plaintiff for $12,000 damages. The mortality tables were admissible where a proper foundation had been laid (M., O. & G. Ry. Co. v. Collins, 47 Okla. 761, 150 Pac. 142), and there is no evidence that the amount of recovery was fixed by the jury under the influence of passion or prejudice. The jury, after hearing all the evidence and being correctly in-

structed as to the law applicable thereto, have given their verdict, and we will not set is aside unless it clearly appears that they committed some gross and palpable error or were swayed by improper bias, passion, or prejudice or have totally mistaken the rules of law by which damages are regulated. St. L. & S. F. Ry. Co. v. McClain, 63 Okla. 75, 162 Pac. 751; Boling v. Asbridge, 84 Okla. 280, 203 Pac. 894; Sand Springs R. Co. v. Westhafer, 92 Okla. 89, 218 Pac. 525.

The judgment is therefore affirmed.

All the ·Justices concur.

Note.—See under (1) 29 Cyc. pp. 530, 531. (2) 23 C. J. p. 49 § 1792. (3) 33 Cyc. p. 1049. (4) 29 Cyc. pp. 505, 506. (5) 33 Cyc. p. 668. (6) 38 Cyc. p. 1711. (7) 4 C. J. p. 873 § 2847.