## CHICAGO, R. I. & P. R. Co. et al. v. OWENS.

No. 9099—Opinion Filed Jan. 13, 1920.

Rehearing Denied April 20, 1920.

(Syllabus by the Court.)

**1. Railroads—Service of Process—Receivers.**

Where an action is instituted against the receivers of a railroad company as defendants, service upon a person who, in the absence of receivership, is a proper person to receive service of process against the railroad company, is deemed a sufficient service as against the receivers.

**2. Death—Action for Wrongful Death—Widow as Party Plaintiff.**

In all cases in this state, for the death of a husband, where such death is occasioned by the wrongful act or omission of any person, or corporation, and where it is shown that the residence of the husband at the time of the death was in this state, and that no personal representative or administrator has been appointed, the action is properly brought by the widow in her own name.

**3. Railroads—Care Required—Trespassers on Track.**

A railroad company in the operation of its trains, while it does not owe an unauthorized person upon its tracks the duty to use ordinary care in discovering such person on its tracks or to discover his dangerous position, must, after the discovery of his peril, use ordinary care to avoid doing him injury.

**4. Same.**

The law does not impose upon those in charge of railway trains, the duty to keep a lookout for trespassers who may be upon the track, in the country, away from public crossings, and hence, in order to hold the company liable for the injury, plaintiff must show not that those in charge of the train were in a position to see, but, either that they did see, or were in a position where they could not help but see the perilous position of the tresspasser.

**5. Trial—Instructing Verdict—Weight of Evidence—Province of Jury.**

The jury are the sole judges of the credibility of the witness and the weight of the evidence, and where positive evidence has been introduced to prove a certain state of facts, and no evidence has been introduced to rebut the same, but said evidence is inherently improbable, or the physical facts and circumstances surrounding the case tend to contradict such evidence, and the testimony, when taken together with the physical facts and circumstances surrounding the case, is of such a nature that men of ordinary intelligence might draw different conclusions therefrom, it is not error for the court to overrule a motion to instruct a verdict.

**6. Railroads—Action for Death of Person on Track—Sufficiency of Evidence.**

Upon an examination of the record, held, the case was properly submitted to the jury under proper instruction applicable to the case, and the evidence is sufficient to support said verdict.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by Letha Owens against the Chicago, Rock Island & Pacific Railway Company, a corporation, and H. U. Mudge and Jacob M. Dickinson, receivers. Judgment for plaintiff, and defendants bring error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, J. E. DuMars, and Abernathy & Howell, for plaintiffs in error.

Baldwin & Carlton, for defendant in error.

McNEILL, J. This action was instituted in the superior court of Pottawatomie county by Letha Owens against the Chicago, Rock Island & Pacific Railway Co., a corporation and H. U. Mudge and Jacob M. Dickinson, receivers of said railway company, to recover damages for the death of her husband, Jesse Owens, alleged to have been killed by one of defendant's passenger trains on July 5, 1915, near Okarche, Oklahoma.

From a judgment in favor of the plaintiff in the sum of $3,000, the defendants have appealed, and, for reversal of said judgment, rely on four specifications of error, which are stated as follows:

First. The receivers were not properly made parties to the action.

Second. Plaintiff sued as an individual, and not in a representative capacity.

Third. The doctrine of the last clear chance has no application to the facts in evidence.

Fourth. The court gave erroneous instructions.

We will discuss the questions in the order above set out.

First. Were the receivers properly served and made parties to the action? The record disclosed that E. E. Blake was a resident agent of the Chicago, Rock Island & Pacific Railway Co., and was appointed on March 21, 1912, and has been such agent since that time. The receivers were served by service of summons on E. E. Blake, as resident agent E. E. Blake filed an affidavit that he was not the agent for service for the receivers, but was the agent for the railway company. There is some conflict in the authorities upon this question in the different states, but the weight of the authority is announced in the

case of Ennest v. Pere Marquette R. Co. (Mich.) 142 N. W. 567, 47 L. R. A (N. S.) 179. The rule announced in said case is quoted in the note of 47 L. R. A. (N. S.) page 181, as follows:

"Where the action is instituted against the receivers as defendants, service upon a person who, in the absence or a receivership, is a proper person to receive a service of process against the railroad company. is deemed a sufficient service as against the receiver. Eddy v. Lafayette, 163 U. S. 456, 41 L. Ed. 225, 16 Sup. Ct. Rep. 1082: Ganebin v. Phelan, 5 Colo. 83; Grady v. Richmond & D. R. Co., 116 N. C. 952, 21 S. E. 304."

To the same effect is the holding of this court in the case of M., K. & T. R. Co. v. Hudson, 71 Oklahoma, 175 Pac. 743.

E. E. Blake, in the absence of a receivership, was a proper person to receive service of process, and the receivers having failed to designate a different person, upon whom service might be made, we think the receivers were properly served and made parties to said action, and the court committed no error in overruling the motion to quash the service of summons upon said receivers.

The second assignment of error is that the plaintiff was not entitled to recover in her individual capacity. The petition alleged that she was the widow of Jesse Owens, the deceased, and that no executor or administrator of the estate had ever been appointed, and that there were two children, to wit: William Owens. five years of age, and Dosie Owens, three years of age. Section 5282, Rev. Laws 1910, provides as follows:

"In all cases where the residence of the p rty whose death has been caused as set forth in the preceding section, is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The Territorial Supreme Court, in the case of Oklahoma Gas & Electric Co. v. Lukert, 16 Okla. 397, 84 Pac. 1076, in construing said section of the statute, stated as follows:

"In all cases in this territory, for the death of a husband, where such death is occasioned by the wrongful act or omission of any person, or corporation, and where it is shown that the residence of the husband at the time of the death was in this territory, and that no personal representative or administrator has been appointed, the action is properly brought by the widow in her own name."

This case has been followed by this court in the cases of Big Jack Mining Co. v. Parkinson, 41 Okla. 133, 137 Pac. 678, and Blunt v. Chicago, R. I. & P. R. Co., 70 Oklahoma, 173 Pac. 656. Under this section of the statute the widow was the proper person to bring the action.

The third assignment of error is that the court erred in overruling the motion of defendants for an instructed verdict in their favor, for the reason that there is not sufficient evidence to support the verdict.

It was alleged in the petition, and supported by the evidence, that the deceased and a brother were lying asleep, or in an unconscious condition, on the railroad track about 200 or 250 feet south of a public railroad crossing and close to a private crossing, where they were run over by an engine and train of defendant railway company. The case was tried upon the theory that the deceased was a trespasser, and if the verdict can be sustained, it must be by applying the law applicable to the doctrine or rule of the last clear chance. The rule announced by this court in the case of Atchison, T. & S. F. R. Co. v. Baker, 21 Okla. 51, 95 Pac. 433, St. Louis & S. F. R. Co. v. Clark, 42 Okla. 638, 142 Pac. 396; Atchison, T. & S. F. R. Co. v. Miles, 69 Oklahoma, 170 Pac. 896, is as follows:

"A railroad company in the operation of its trains, while it does not owe an unauthorized person upon its tracks the duty to use ordinary care in discovering such persons on its tracks or to discover his dangerous position, must, after the discovery of his peril, use ordinary care to avoid doing him injury."

The Supreme Court of Kentucky, in the case of Tennessee Cent. R. R. v. Cook, 146 Ky. 372, 142 S. W. 683, stated the rule as follows:

"The law does not impose upon those in charge of railway trains the duty to keep a lookout for trespassers who may be upon the track, in the country, away from public crossings, and hence, in order to hold the company liable for the injury, the plaintiff must show, not that those in charge of the train were in a position to see, but either that they did see or were in a position where they could not help but see the perilous position of the trespasser."

It is the contention of the plaintiffs in error that there was not sufficient evidence to submit the case to the jury. In support of this contention they rely upon the fact that the engineer testified positively that he did not see the deceased until the train was on the public highway crossing, which was approximately 200 feet from where the deceased and his brother were lying on the railroad

track, and the engineer immediately blew the whistle, set the brakes, and did everything within his power to stop the train, but it was impossible to stop the train in a less distance than 250 feet, and that he did upon this occasion stop the train within 250 feet. He further testified that neither the deceased nor his brother moved or attempted to get off the track, but were apparently lying on the track either asleep or unconscious. Plaintiffs in error contend that this evidence was not contradicted or impeached in any manner, and must be taken as true, leaving no question for the jury to pass upon. If the engineer's testimony must be accepted as true, there is no evidence to support the verdict of the jury. There is no evidence to contradict the testimony of the engineer, unless it can be said that the physical facts are sufficient to contradict his positive testimony.

The country surrounding where deceased was lying was a rolling prairie country. The train was coming from the north, and the track was straight for about four miles before the train reached the place where deceased was lying. The engineer, riding in the engine, was elevated about ten feet above the rails. The deceased was lying approximately 200 feet south of where a public highway crossed the railroad and close to a private crossing. The engineer testified he was a man 48 years old, and his eyesight was good; that it was a bright day; that he blew the whistle about a quarter of a mile north of the public crossing, and from where he blew the whistle to where the deceased was lying was a straight track, the view was unobstructed and it was slightly down grade; that the train was running approximately 45 miles per hour, and that from the time he blew the whistle he was looking straight down the railroad track, until he ran over the body of the deceased; that while on the highway crossing, he first saw the objects on the track and could tell that the objects were human beings. He further testified that if he had seen the objects when he was 260 feet away from them, he could have stopped the train, and avoided running over the bodies, and that when 260 feet away from the bodies he was looking straight down the track to where the bodies were. The testimony of the engineer upon this question, which we think material, is as follows:

"Q. Well, about how far was the straight —was the track straight from the crossing and from where the bodies lay—running back north, about how far was the track straight? A. About four miles. Q. About four miles? What time of day was it you struck these bodies? A. Eight forty-five in the morning. Q. What kind of a day was it, cloudy or

was the sun shining? A. It was a bright day. Q. Now, you have stated that the first time you saw these men was when you were on the railroad crossing, 250 feet north of them? A Yes, sir. Q. Had you been looking along the track from the time you blew the whistle for the crossing until you got to that road? A. Yes, sir. Q. It is your duty in pulling a passenger train to keep a lookout along the track for obstructions that might derail the train? That is true, isn't it? A. Yes, sir. Q. Were you performing that duty at the time that you ran over these bodies? A. Yes, sir. Q. From the time that you blew the whistle and passed the whistling board up until you ran over the bodies had you been attending to that duty to keep a watch out ahead for bodies that might derail the train? A. Yes, sir. Q. Had you also been keeping a lookout ahead for persons who might be on the highway crossing? A. Yes, sir. Q. When you first saw these men lying upon the railway track, I wish you would tell the jury whether you knew they were human beings? A. Yes, sir. Q. You did know it? A. Yes, sir. Q. Were they in plain view? A. Pretty plain view. Q. No weeds along that railroad track? A. No, sir. Q. What kind of ballast was used there for the road bed? A. This burned gumbo. Q. That creates a reddish color or yellowish, doesn't it? A. Yes, sir. Q. These men were lying on that? A. Yes, sir. Q. You knew then, when you were on that crossing that these men were human beings? A. Yes, sir. * * * Q. How far did your train go or move from the time you put on this emergency brake until it stopped? A. Two hundred and fifty feet; about two hundred and fifty feet. Q. Then, if you had seen those men when you were within 60 feet of this crossing you could have stopped by making use of the means that you did make use of— A. Sixty feet. Q. That would have made 260 feet from the bodies; if you had seen them, say, at that point you could have stopped without going over them? A. Yes, sir. Q. Now, I want you to tell the jury what you were doing; what you were looking at when you were within 60 feet of that crossing? A. I was looking straight ahead, right down the track. Q. You were looking straight ahead, right down the track? A. Yes, sir. Q. Do you tell them you did not see these men lying there? A. Yes, sir. Q. You do? What speed, at what speed were you running? A. From 40 to 45 miles an hour."

Under this state of facts, did the jury have a right to disregard the testimony of the engineer? The rule announced in 14 Enc. Ev. 121, is as follows:

"While the fact that the jury are the sole judges of the credibility of the witness is universally recognized (and they are not bound by the mere swearing of witnesses), it is equally well established that they will not be allowed capriciously to disregard the unimpeached and uncontradicted testimony

of witnesses." Newton v. Pope, 1 Cow. (N. Y.) 109; Engmann v. Estate of Immel, 59 Wis. 249, 18 N. W. 182; Lewis v. N. Y. R. Co., 50 Misc. Rep. 539, 99 N. Y. Supp. 462; Kelly v. Jackson, 6 Pet. 622, 8 L. Ed. 523.

This quotation was approved by this court in the case of Hamilton v. Blakeney, 65 Oklahoma, 165 Pac. 141, where the court said:

"The evidence being uncontradicted, the witness not even having been cross-examined upon it, and not inherently improbable, either in itself or when taken in connection with circumstances, the jury were not at liberty to disregard it."

A very similar question was raised in the case of Lusk v. Haley, 75 Oklahoma, 181, Pac. 727, where this court held, in substance, it was a question for the jury to say whether they should accept the positive testimony of the engineer, or say that the physical facts and circumstances and testimony of other witnesses contradict the testimony of the engineer.

We think the rule above announced the general rule and the exception. The general rule is, where the testimony is positive upon a certain state of facts, the jury cannot capriciously disregard the same. The exception to the rule is, where the physical facts and the circumstances surrounding the transaction tend to contradict the positive testimony, or the positive testimony is inherently improbable, then it becomes a question for the jury. The reason for the exception is apparent. For illustration, if, in the case at bar, the engineer had testified positively that his eyesight was good, that he was looking straight down the track all the time for more than a quarter of a mile prior to the time of running over the bodies, the track was straight, his view was unobstructed, and that he did not see the bodies at all, then, if there were no exceptions to the rule, said testimony would have to be taken as true. However no one would question the fact that said statement would be inherently improbable, and the physical facts and circumstances would contradict such testimony.

This court, in the case of Continental Casualty Co. v. Owen, 38 Okla. 107, 131 Pac. 1084, stated:

"In trials by jury in this jurisdiction, it is only where the facts, although undisputed, are such that all reasonable men must draw the same conclusion from them, that the court is authorized to direct a verdict."

Again, this court, in the case of State Bank of Westfield v. Kiser, 46 Okla. 180, 148 Pac. 685, stated as follows:

"It is not the policy of the law, in jury trials, that the court shall invade the province of the jury and weigh the evidence and determine the facts, but that all issues of fact, whether they be clear or obscure, shall be submitted to the jury and determined by them."

Also, in the case of Continental Insurance Co. v. Chance, 48 Okla. 324, 150 Pac. 114, this court said:

"Even though the defendant offers no evidence in rebuttal, where the defendant had denied plaintiff's case, and the evidence introduced on the part of the plaintiff to prove his case was of such a nature that men of ordinary intelligence might draw different conclusions therefrom, it would be error for the court to instruct a verdict."

Let us measure the evidence of the engineer by applying the two rules of law just referred to, and determine whether it was error for the court to submit the case to the jury. Our common knowledge and experience lead us to believe that a person could readily see two men lying on a railroad track for more than a distance of 200 feet, especially if the person were riding on an engine at an elevation of ten feet above the track at the time. We know from common experience in going toward an object lying upon the ground that we could see the object prior to the time that we could tell positively that the same was a human being. The only excuse for not seeing the object prior to the time the engineer was within 200 feet of the same, was that there was a little haze or heat waves, but as to the amount of haze or heat waves, or in what way the same affected the vision of the engineer, that does not appear from the record. Can we say, as a matter of law, that all reasonable men would draw the same conclusion from the testimony of the engineer? That is, did he see the bodies before he was 200 feet away from them, admitting he was looking and nothing obstructed his view? Or would not reasonable men differ upon that question, and draw different conclusions, and some regard the testimony as inherently improbable? We cannot say that all men would draw the same conclusion from the testimony when considering all the physical facts and circumstances connected with such transaction. We think the facts and circumstances tend to contradict the positive statement of the engineer. That being true, it became a question of fact for the jury to weigh the evidence in connection with all the facts and circumstances; therefore it was not error for the trial court to overrule the motion to direct the verdict, and submit the case to the jury for their consideration under proper instruction.

It is next contended that the court erred in giving instructions Nos. 10 and 11, but an examination of these instructions discloses that the court submitted the case properly to the jury upon the law applicable to a case where the doctrine and law of the last clear chance applied, and upon the theory that the deceased was a trespasser, that the railroad company owed him no duty to look out for him, but only owed him the duty, after discovering him in a place of peril, to use ordinary care to prevent injury, and that the plaintiff could not recover unless the engineer actually saw the deceased in time to have prevented the accident. These instructions correctly state the law applicable to the case at bar.

The record presents a very close case upon a question of fact. The questions of fact were properly submitted to the jury, under proper instructions, and the jury having found the issues in favor of the plaintiff, we think there is sufficient evidence to sustain their verdict.

For the reasons stated, the judgment of the trial court will be affirmed.

RAINEY, KANE, PITCHFORD, JOHNSON, and BAILEY, JJ., concur.