### WRIGHT v. KEMPER, Rec., et al.

No. 18828.   Opinion Filed April 16, 1929.

Rehearing Denied July 9, 1929.

260

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison & Sons, for plaintiff in error.

E. A. Boyd and William H. Moore, for defendants in error.

JEFFREY, C. This action was begun by John A. Wright, in the district court of Jackson county, against William T. Kemper, as receiver of the railway lines and property of the Kansas City, Mexico & Orient Railway Company and L. E. Hooten, who it appears was fireman on the locomotive which caused the injury complained of. Plaintiff alleged that, while traveling in an automobile upon a public railway crossing in Washita county, he was struck by a train operated by the receiver and defendant Hooten; and that the injury received by him was the result of the negligence of said defendant in failing to sound the whistle or ring the bell while approaching said crossing as required by law. The injury occurred October 3, 1924. The suit was filed July 25, 1925. Summons was served on the receiver by delivering a copy thereof to E. A. Kleinsteiber, who was station agent for the railroad at Altus in Jackson county. Service was had upon Hooten by the issuance of the summons to Major county, and by delivering a copy thereof to him in said county. The receiver filed a special appearance and motion to quash the writ of summons on the grounds that Kleinsteiber was not the agent, servant or employee of the receiver; and for the further reason that said Kleinsteiber was not the agent, servant or employee of the Kansas City, Mexico, & Orient Railroad Company. Hooten filed a special appearance and plea to the jurisdiction of the court on the grounds that no valid and legal service of summons had been or could be had upon the other defendant in Jackson county, said receiver not then being engaged in the operation of a railroad in or through Jackson county; and that the person upon whom summons was served

for said receiver was not the agent, servant or employee of said receiver. The special plea included the further grounds that Hooten was not a resident of Jackson county, but was a resident of Major county; that the cause of action did not occur or accrue in Jackson county; that plaintiff was not a resident of Jackson county; and that under the Constitution and laws of the state of Oklahoma, the venue of said action was not in Jackson county; and that the defendant Hooten could not be required to respond to an action in said county. The motion and plea were sustained on September 18th, and on November 3, 1925, plaintiff filed an amended petition against William T. Kemper, receiver of the railway lines and property of the Kansas City, Mexico & Orient Railroad Company, L. E. Hooten, an individual, and the Kansas City, Mexico & Orient Railway Company, a corporation. Alias summons was issued and service attempted to be had upon the receiver by delivering a copy of the summons on November 4, 1925, to E. A. Kleinsteiber, the station agent for said railway company at Altus. Service was had upon Hooten in the same manner as before, and service was had upon the Kansas City, Mexico & Orient Railway Company, by delivering a copy of the summons to the agent, Kleinsteiber. The receiver refiled his special appearance and motion to quash on the same grounds as before. Hooten refiled his special appearance and plea to the jurisdiction on the same grounds as before. The Kansas City, Mexico & Orient Railway Company filed a special appearance and a plea in bar upon the grounds that plaintiff founded his cause of action against said defendant wholly upon two certain decrees of the United States District Court for the first division of Kansas in equity, Cause Consolidated No. 239-N. The first decree was one of foreclosure and sale of the railroad lines and property of the Kansas City, Mexico & Orient Railroad Company made and entered on the 7th day of February, 1924. The second decree was one made on the 24th day of March, 1925, accepting bid, confirming sale, and approving reorganization agreement. The reorganization was in the name of the Kansas City, Mexico & Orient Railway Company, which became the purchaser of the properties of the railroad company. The railway company's plea in bar recited at considerable length the provisions of the decree of foreclosure and sale, which are, in substance, that the special master should execute a deed to the properties in favor of the purchaser, which deed

should recite as a condition that the operation of the railroad should be continued; that the purchaser should take title subject to a lien to secure the payment of any other indebtedness or obligations which had been duly and lawfully contracted or incurred by the receiver in the operation of the property; that the clerk of the court should publish notice to creditors requiring the holders of any claims against the railroad company or the receiver thereof not heretofore presented, to present the same by intervening petition in said cause, or if a claim against the receivers, to bring suit against him thereon, and that any such claim not presented or sued upon within the period of six months after the first publication of such notice should not be enforceable against said receiver or the property sold or against the purchaser thereof. It was further recited that notice to creditors was duly given, and that the first publication of such notice was made on March 31, 1925; that plaintiff failed and refused to file his claim or commence suit against said railway company within the time required by the decree; that said railway company was not made a party defendant until November 3, 1925; and that by reason thereof plaintiff's action against the receiver and against said railway company was wholly barred. The motions and pleas of all defendants were overruled. The defendants excepted and filed their answers to the merits, but therein insisted upon the objections to the jurisdiction of the court made by said motions and special pleas.

The case was called for trial on the 18th day of April, 1927, and at that time, upon request of the defendants, the court heard defendants' evidence in support of their previous pleas. The pleas were again overruled, and the cause proceeded to trial to a jury. During the trial of the case, additional evidence was offered for the purpose of establishing a lack of jurisdiction. At the close of all the evidence, defendants moved for judgment, which motions were sustained, and judgment entered in favor of defendants on the grounds that no valid service was ever had upon the receiver and Hooten; and that plaintiff's claim against the railway company was barred at the time said railway company was made defendant in the case. From this judgment, plaintiff has appealed.

Plaintiff presents his several assignments of error under nine separate propositions of law. The first three are so related that they may be disposed of together. The first one is that, considering the order of the federal court binding on plaintiff, which he denies, plaintiff's suit was brought within time and complies with the order of the federal court in the receivership sale. The next two propositions are based upon the assumption that plaintiff's claim against the receiver was sued on within six months from the date of the first publication of notice to creditors issued out of the federal court as therein required. The questions which the trial court was called upon to decide, and which are the determining questions on this appeal, are questions of jurisdiction. All of the defendants' pleas were directed to the jurisdiction of the parties. The objections to the court's assumed jurisdiction were never waived, but were insisted upon throughout the pendency of the action and until the evidence was closed. The court, in effect, sustained defendants' renewed objection to jurisdiction when it rendered judgment in their favor. The two decrees of the federal court, the notice to creditors, and other record and parol evidence on the question of jurisdiction, were received in evidence. That part of the order limiting the time within which holders of claims against the receiver should sue, and the greater portion of which was incorporated in the notice to creditors, is as follows:

"The clerk of this court shall publish at least once a week for the period of two weeks in one newspaper, published in Wichita, Kan., a notice requiring the holders of any claims against the railroad company or the receiver thereof not heretofore presented, to present the same by intervening petition herein or if a claim against the receiver to bring suit against him thereon, and any such claims which shall not be so presented, sued on, or filed within the period of six months after the first publication of such notice shall not be enforceable against said receiver, or against the property sold or against the purchaser or purchasers, or his or their heirs, executors, administrators, successors or assigns. * * *

"That all claims which shall not be so presented, sued on or filed in accordance with said notice within the period of six months after the first publication of notice by the clerk of this court, as provided in the original decree, shall cease to become any claim or charge against the receiver of the property herein sold, or against the purchaser or the new company taking title to said property."

The record shows that the railroad lines and property originally belonged to the Kansas City, Mexico & Orient Railroad Company; that William T. Kemper had been appointed receiver of the property of said railroad company by the federal court in a

creditor's suit; that the property and assets of the railroad company were sold under order of the federal court to the Kansas City, Mexico & Orient Railway Company, a new corporation, and that the new corporation took charge of the properties, and commenced operating the roads at midnight March 31, 1925. The record shows that the receiver was not discharged at that time; but it does appear that the railroad lines and property passed from his possession and control to that of the new purchaser on April 1, 1925. The receiver had not filed his final report, and no doubt for certain purposes was still a receiver for the court at the time this action was started. He was not, however, acting in the capacity of a common carrier. The record further shows that prior to April 1, 1925, E. A. Kleinsteiber was freight and passenger agent for the receiver at Altus. From April 1st, until the trial of the cause, the record shows that he was in the employ of the railway company. The original petition made William T. Kemper, receiver of the Kansas City, Mexico & Orient Railway Company, and L. E. Hooten, an individual, defendants, and service of summons for the receiver was had upon Kleinsteiber in July, 1925. At that time, Kleinsteiber was not agent for the receiver, but was agent for the railway company. The service as to the receiver, if justified at all, must be justified under section 247, C. O. S. 1921. That section provides, in substance, that if a railroad company fails to designate or appoint a service agent in each county through which the road may run, process may be served on any local superintendent of repairs, freight agent, agent to sell tickets, or station keeper, or by leaving a copy of such process at any depot or station in such county with some person in charge thereof. No special provision has been made for the service of process upon a receiver engaged in the operation of a railroad. However, it has been held that, in a suit against the receiver of a railroad company, service upon a person who, in the absence of receivership, is a proper person to receive service of process against the railroad company, is sufficient service against the receiver. C., R. I. & P. Ry. Co. v. Owen, 78 Okla. 114, 189 Pac. 171. This is upon the theory that the receiver is a substitute common carrier. At the time the suit was instituted, the receiver was not engaged in the operation of a railroad in or through Jackson county. Kleinsteiber was not his agent and the purported service was invalid. The purported service upon Hooten, who resided in Major county, must depend for authority upon the provisions of section 234, C. O. S. 1921, which is as follows:

"Where the action is rightly brought in any county, a summons shall be issued to any other county against any one or more of the defendants at the plaintiff's request."

The section, however, authorizes the issuance of summons to another county, as was done in this case, only when the action is rightly brought in the county from which the summons is issued, and was so held in the case of Bearman v. Hunt, 68 Okla. 96, 171 Pac. 1124. The action was not rightly brought in Jackson county for the reason that proper service could not be had on any of the defendants, and therefore the court acquired no jurisdiction over Hooten.

It appears that the objections to the jurisdiction of the court by the receiver and Hooten were sustained on the 18th day of September, 1925. On November 3, 1925, an amended petition was filed by plaintiff in which he for the first time brought in Kemper, as receiver of the railroad company, as defendant, and for the first time brought in as a defendant the railway company. This was more than six months after the first publication of the notice to creditors, given by virtue of the decree of the federal court at Wichita, Kan. The first petition was filed and summons issued before the expiration of six months from the date of the first publication of notice to creditors. The service as to the receiver and as to Hooten was invalid, and the trial court so held, but it is contended that this action was commenced and service had in good faith, and that plaintiff complied with the order of the federal court, which required that a claim against the receiver be sued on within six months. There is some contention that there is no limitation except the limitation statutes of Oklahoma on the filing of a suit against the railway company. The federal court undoubtedly had in mind winding up the business of the railroad company in a timely manner so as to protect creditors who had just claims. But it is not reasonable to believe that the purchasing company would have paid as much for the assets of the old company, had it been required to take the property subject to claims which may be filed over a period of two or three years. The principal purpose of such an order is to aid the court in the discharge of its duty. C., R. I. & P. v. Lincoln Horse & Mule Com. Co., 284 Fed. 955. The limitation of time within which to file suits was also

beneficial to creditors and the purchaser. The court no doubt had in mind the commencement of an action such as could be maintained. What aid would it have been to the court in administering the estate of the railroad company and protecting the interest of its creditors in a timely and just manner to have permitted the commencement of an action in a jurisdiction where proper venue did not lie, and where proper service was not and could not be had and ultimate relief obtained? Such an order would have authorized an insurmountable obstruction to the performance of the court's duties. The filing of an action in a locality where venue did not lie would not meet the requirements of the decree and notice. As the suit was originally commenced, there was no proper venue in Jackson county, and we hold that plaintiff's claim against the receiver of the railroad company was not sued on as contemplated by the decree within six months from the date of the first publication of notice to creditors.

Plaintiff's fourth proposition, briefly stated, is that the special appearance and motion to quash the alias summons by the receiver was overruled on the 13th day of November, 1926; that the term of the court at which said order was made had expired prior to the ruling in April, 1927, and that said order and judgment sustaining objection to jurisdiction made in April, 1927, at the close of the evidence, was beyond the jurisdiction of the court to make, and null and void. Counsel do not cite any authorities in support of this proposition, and from our limited examination, we have been unable to find any. On the contrary, the authorities seem to support the action of the trial court in this particular. The receiver was objecting to the jurisdiction of the court at every stage of the proceeding. He filed his answer under protest, and insisted throughout his answer that the court had no jurisdiction of his person. It certainly could not be said that he waived his right to object to the jurisdiction of the court, for it has been held by this court that where a party has objected to the jurisdiction of the court over his person and the objection has been overruled, he may defend against the action without waiving his objection, provided he does not invoke the jurisdiction of the court by demanding affirmative relief in his pleading. Commonwealth Cotton Oil Co. v. Hudson et al., 62 Okla. 23, 161 Pac. 536; Braden v. Williams, 101 Okla. 11, 222 Pac. 948. There is nothing in the receiver's answer inconsistent with his objection to the jurisdiction of the court, and the objection was not waived by his answer. If the right to object to the jurisdiction of the court had not been waived at the time of trial, and the court did not have jurisdiction of his person, we see no reason why the receiver could not, during the trial or at the close of the trial by permission of the court, renew his objection to the court's jurisdiction. An objection for want of jurisdiction is in order at any stage of the proceedings. This applies to the jurisdiction of the person as well as the subject-matter provided want of jurisdiction of the person has not been waived.

It is next contended that the uncontradicted evidence shows that the receiver had not been discharged; that the sale of the properties to the railway company was merely tentative; that the receiver's control over the properties had not been severed, and that Kleinsteiber was the joint agent of the receiver and the railway company. As heretofore stated, the record does disclose that the receiver had not been discharged on April 23, 1925, only a short time before this action was commenced. And the order of the federal court confirming the sale of the property to the railway company, while it provides that the court may take and resell the property conveyed in case the purchaser or purchasers shall fail to pay any balance of the purchase price, requires that all property originally belonging to the railroad company be turned over and delivered to the grantee. The best that can be said in favor of this proposition is, that the receiver was merely retained during the final disposition of such matters as unsettled claims against him. Nowhere does it appear that the receiver should retain any control or management of the railroad and properties, but, on the contrary, the record discloses that the properties were turned over to the purchasing company, and that Kleinsteiber became the employee of the purchasing company on April 1, 1925.

In support of his contention that service on Kleinsteiber was service on the receiver, plaintiff relies on the cases of M., K. & T. Ry. Co. v Hudson, 71 Okla. 157, 175 Pac. 743, and C., R. I. & P Ry. Co. v. Owen, 78 Okla. 114, 189 Pac. 171. In the first case, the cause of action arose against the railroad before, and the suit was commenced after, the appointment of a receiver. Service was had upon the station agent who continued in such capacity after the appointment of the receiver. It was held that the agent, having occupied the position of agent to the railroad company, as principal,

such relation was not ipso facto revoked by the appointment of a receiver; and that in the absence of a showing to the contrary, such agent would be deemed to be still acting as station agent for his company for the service of summons although acting for the receiver in another sense. In the latter case, suit was commenced against the receivers of the railway company and service was had upon the station agent, and it was there held that service upon a person who, in the absence of a receivership, is a proper person to receive service against the railroad company, is deemed sufficient service as against the receivers. Neither of these cases is analogous to the case at bar. As heretofore pointed out, there would be no authority for binding a receiver by service upon a local station agent, except where such receiver is acting in the capacity of a common carrier and comes within the terms of section 247, C O. S. 1921. In the instant case, the receiver was not acting as a common carrier in or through Jackson county at the time summons was served; neither was he in possession or control of the railroad lines and properties of the railway company.

It is contended by counsel for plaintiff that the order and notice issued out of the United States District Court at Wichita amounted to a suspension of the two-year limitation statute of Oklahoma, and was inoperative and ineffectual as against plaintiff in this suit. The order and notice referred to provide that claims against the receiver and undisposed of should be sued on within six months from the date of the first publication of the notice, or would thereafter be barred and unenforceable against the receiver or against the property sold or against the purchaser thereof. The property of the railroad company was, at the time the decree was entered, being sold at the instance of creditors of the company. Sales of this character and reorganization agreements without judicial sales are the most effective and practical means for the protection of creditors of an insolvent railroad company or other concern possessed of assets of great magnitude. These proceedings have many times been upheld and approved by federal courts, and only disapproved and held for naught where certain creditors were unjustly and unfairly discriminated against, or where no provision was made whereby they could participate in the plan of distribution of the property of the insolvent concern or the proceeds from the sale thereof. Phipps et al. v. C., R. I. & P. Ry. Co., 284 Fed. 945. Counsel

for plaintiff cite no authorities, and we know of none, to the effect that, in the absence of the conditions incorporated in the decree of the federal court and accepted by the purchasing company imposing a lien upon the property purchased for a limited time, plaintiff could subject the purchasing company or its property to the payment of his claim. It is argued that the decree and notice do not require that suit be filed against the purchasing company within the limited period of six months, and that the two-year statute of limitations is the only time limit on the filing of suits against said company. The notice and decree may yield to the construction that the limitation within which to sue on a claim was not directed to suits against the purchasing company. However, the decree and notice are specific in requiring that claims against the receiver be sued on within six months, and that if they be not sued on, they shall cease to be a charge against the property sold to the railway company. In so far as the record discloses, it would have availed a claimant nothing to sue the receiver after the delivery of the property to the railway company, except and unless he could in this manner enforce his claim as a charge against the property so delievered. It may be as contended for by counsel for defendants that no authority was granted to sue the purchasing company on a claim which originated while the receiver had possession of the railroad, but even though authority is granted by the decree of the federal court to sue the railway company on such claim, it certainly must have been done within six months, the time specified in the decree and notice. The decree itself is the only authority whereby a claimant could subject the property sold and in the hands of the new company to the payment of claims arising prior to the sale, and the benefits granted by the decree could not be accepted without accepting accompanying limitations and burdens. In the case of C., R. I. & P. Ry. Co. v. Lincoln Horse & Mule Commission Co., 284 Fed. 955, a similar provision with reference to the time within which claims should be filed was under consideration. The syllabus of that case is as follows:

"Where a court of equity, through its receivers, has taken possession of the property of an insolvent corporation in a creditors' suit, it holds the same in trust, to administer and distribute among all unsecured creditors, to effect which distribution it is indispensable to know, as far as possible, the amount of the claims against

it, and an order and notice requiring all creditors to file their claims within a reasonable time fixed or be forever barred and foreclosed, is reasonable, valid, and effective."

There was no judicial sale in the foregoing case, but a reorganization agreement was effected and approved by the court. One of the unsecured creditors, who was not a party to the proceeding, and who did not respond to the notice to file his claim, or be barred from participation in the distribution of the property, filed suit in a state court, and after securing judgment, caused execution to be issued against the property of the company. An injunction proceeding was brought by the company against the creditor to enjoin him from interfering with the use of the property, or from taking it in satisfaction of his debt. It was held that his failure to file his claim, as required by the decree and notice, estopped him and barred him from all right to or interest in the property of the railway company. In that connection the court said:

"After the defendants had thus estopped themselves from claiming any share of this property of the railway company, the court might have sold it to a stranger to the proceeding, vested a perfect title in him free from the claim of the defendants, and it might have distributed all the proceeds equitably among those who presented their claims as required. The title of such a purchaser, however, would have been protected from the claims of the defendants, not by the sale of it, but by the decree of the court foreclosing and barring such claims."

Whether the federal court had authority to limit the time within which to file suit against the receiver, in order to satisfy claims against property remaining in his hands, to a less time than the period provided by the general statutes of limitation, we need not here dceide, but as to the authority of the federal court to fix a reasonable time less than that prescribed by the statutes of limitation within which to file suit in order to impress property with a lien, which the court had sequestered and sold for the benefit of creditors, there can be no doubt. See, also, Phipps v. C., R. I. & P. Ry. Co., 284 Fed. 945.

Plaintiff's brief contains other propositions, but they have been considered in connection with related questions, or by reason of the conclusions reached, a separate discussion of them has been rendered unnecessary. We find no reversible error in the record, and the judgment of the trial court is affirmed.

BENNETT, HERR, TEEHEE, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Courts," 15 C. J. §166, p. 847, n. 31.