## GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORP., Ltd., v. THOMPSON.

No. 14319—Opinion Filed Feb. 5, 1924.

Rehearing Denied March 4, 1924.

(Syllabus.)

1. Trial—Province of Jury—Direction of Verdict.

Where the only testimony upon a material issue is that of an interested party and such testimony is inconsistent or contradictory and the replies to questions are evasive and unreasonable, and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case may be, the court should never direct a verdict, but should submit to the jury all controverted questions of fact under proper instructions.

2. Same.

Record examined, and held, that although the evidence, as to immaterial issues, was inconsistent and contradictory, the testimony upon the issues necessary to a recovery by the plaintiff was positive and consistent and was not contradicted by either the physical facts or the circumstances surrounding the transaction.

3. Same.

It is not error to give peremptory instruction for the plaintiff where the plaintiff's evidence makes out his case, and the defendant introduces no evidence to rebut it.

Error from District Court, Creek County; James I. Phelps, Judge.

Action by J. W. Thomas against the General Accident. Fire & Life Assurance Corporation, Limited, on an insurance policy. Judgment for plaintiff, and defendant brings error. Affirmed.

Thompson & Smith, for plaintiff in error.

C. B. Rockwood, for defendant in error.

MASON, J. This action was commenced in the district court of Creek county by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, to recover on an insurance policy for the loss of two diamonds and other personal property alleged to have been forcibly taken from the plaintiff by highwaymen.

At the conclusion of the plaintiff's evidence, the defendant demurred thereto, which was overruled, after which a motion for a directed verdict in favor of defendant was made and by the court overruled. The defendant then elected to stand on said demurrer, and the plaintiff moved for an instructed verdict, which was by the court sustained. The defendant filed its motion for new trial, which was overruled, and this appeal has been duly perfected to this court.

For reversal. plaintiff in error makes several assignments of error, which may be considered under the one assignment that the trial court erred in not submitting to the jury, as a question of fact, whether or not the plaintiff was held up and robbed as alleged and contended by him, and if so, the amount of the damages sustained by the plaintiff.

The facts in this case are substantially as follows: That on and prior to January 13, 1922, the plaintiff was the owner of two diamonds, one set in a stud and the other in a ring: that he had owned the stud for 15 or 18 months and the ring for some 30 or 40 days: that while wearing these diamonds, the plaintiff was approached by M. E. Menifee. who was soliciting insurance for the defendant company, and advised to have them insured. The plaintiff agreed with the suggestion and requested Menifee to write up the policy, and thereupon Menifee forwarded an application to H. S. Shelor, general agent of the defendant company, at Muskogee and the policy herein sued upon was duly executed by the defendant company and mailed to Menifee at Sapulpa, who delivered the same to plaintiff. The plaintiff paid the premium thereon to Menifee, who deducted his commission and forwarded the balance to the defendant company. It appears that the policy was issued for a total amount of $4,500 and covered many articles of personal property in addition to the diamonds herein referred to, but that it contained a special provision limiting the amount of the recovery of the assured to $2,500 for loss of said property by robbery.

The evidence further discloses that, while Menifee was soliciting the plaintiff to take out the policy of insurance herein sued on, he suggested that the plaintiff, as a matter of precaution, in case of future loss of the diamonds, should have the same appraised by some competent judge of their value, and suggested that the plaintiff take them to one Hall Miller, a jeweler of some 25 years' experience, and that, thereafter, the plaintiff took said diamonds to Miller to be appraised. There is some dispute in the evidence as to whether Menifee accompanied the plaintiff at this time. The evidence does disclose, however, that Miller examined, weighed. and valued the diamonds, and that his conclusions were reduced to writing and delivered to the plaintiff, who later delivered same to the agent of the defendant at Muskogee. This written statement was. not returned to the plaintiff and was not introduced in evidence in the case. Mr. Miller testified, however, that the diamonds weighed between five and six karats and were worth $700 per karat.

The evidence further discloses that just about dark one evening, a few days after the issuance of said policy, and the appraisal of the property, the plaintiff. still wearing the diamonds, started in his automobile from his home in Sapulpa to his farm some 17 miles away for the purpose of bringing his daughter and her child to town; that when he reached the point where the highway crosses the Frisco railway some six or seven miles from Sapulpa. he was held up by two highwaymen or "hijackers" and compelled to drive some distance from the road, where he was robbed of both diamonds, a watch and some money: that after being released by the robbers he returned to his home in Sapulpa and immediately notified the agent of the defendant company and one John Willard, who. it appears. was a deputy sheriff. Later, a claim was made under the policy and payment refused by the defendant.

The testimony of the plaintiff, relative to where he had secured said diamonds and the amount of the purchase price, was more or less indefinite and somewhat conflicting, but it appears that the plaintiff and one Dr. W. A. Cromwell were engaged in the drug business in the city of Tulsa, and that Cromwell borrowed various sums of money from the plaintiff, and upon being unable to repay the same sold the diamonds to the plaintiff for a small consideration in addition to the money borrowed. The testimony fixes the consideration for the sale of one diamond at from $3,200 to $3,500, and the other at from $1,000 to $1,050. It is because of the conflict and the character in general of this testimony that the defendant contends that the trial court erred in refusing to submit the case to a jury, and for reversal counsel for plaintiff in error cite Moore v. First Nat. Bank of Iowa City, 30 Okla. 623, 121 Pac. 626; and Chicago, R. I. & P. Ry. Co. v. Owens, 78 Okla. 114, 189 Pac. 171.

In Moore v. First Nat. Bank of Iowa City, supra. the plaintiff brought suit on several bills of exchange drawn and accepted by the defendant, who introduced certain contradictory and evasive testimony, which the lower court considered of no probative force and instructed a peremptory verdict for the plaintiff, and this court in reversing the case uses this language, which is cited and relied upon by the plaintiff in error in the instant case:

"Where the only testimony upon a material issue is that of an interested party, and such testimony is inconsistent or contradictory and the replies to questions are evasive and unreasonable. and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case

may be, the court should never direct a verdict, but should submit to the jury all controverted questions of fact under proper instructions."

The case of Chicago, R. I. & P. Ry. Co. v. Owens, supra, grew out of a killing of two men by the train of the defendant company. The engineer testified that he did not see the men on the track until within 200 feet of them, and that he exerted every possible means to stop the train before running over them, but that this was impossible. His testimony, so far as these statements were concerned, was undisputed. The company claimed this a complete defense to the action. The engineer also testified that the track was straight for about four miles before he struck the men; that he was keeping a lookout ahead all the time. The plaintiff contended that these circumstances contradicted or, at least, cast doubt upon the testimony of the engineer as to the distance he was from the men when he first saw them. The trial court concurred in this view and submitted the case to the jury, which resulted in a verdict for the plaintiff. On appeal, this court held that the variance between the conclusions of the engineer and the actual circumstances incident to his testimony was sufficient to submit the case to the jury upon this question, and affirmed the judgment of the trial court. In the body of the opinion the following language is used:

"We think the rule above announces the general rule and the exception. The general rule is, where the testimony is positive upon a certain state of facts, the jury can not capriciously disregard the same. The exception of the rule is, where the physical facts and the circumstances surrounding the transaction tend to contradict the positive tesimony, or the positive testimony is inherently improbable, then it becomes a question for the jury."

We fail to see the applicability of this rule to the case at bar, inasmuch as there are no physical facts or circumstances surrounding the transaction which tend to contradict the positive testimony of the plaintiff, nor is the positive testimony of the plaintiff, in the instant case, inherently improbable.

Counsel for plaintiff in error, in their brief, contend that the plaintiff is alone as a witness to the holdup and that he is a deeply interested witness, and then states if this instructed verdict is right on the evidence in this cause, it would be tremendously easy to victimize an insurance company on policies assuming risks of loss by robbery from the person. We admit that this must be true, but when the defendant company assumed the risk in this case, it must have known from the very nature of the transaction that it was highly improbable that witnesses other than the assured himself could be produced to testify to a loss such as the one sued on herein.

We have carefully examined all the evidence in this case, and while some portions of it, as stated above, are inconsistent and contradictory, that portion is limited to the purchase price of said diamonds and the manner in which they were secured. The evidence is positive and uncontradicted that the plaintiff was the owner of said diamonds, and the evidence of a jeweler of 25 years' experience selected by the agent of the defendant company fixed the value of the two diamonds at approximately $4,200 and is undisputed. This evidence, as to the ownership of said diamonds by the plaintiff and the value thereof, and as to the loss by highway robbery, was not inconsistent, evasive, or unreasonable, nor did the physical facts and circumstances surrounding the transaction tend to contradict such positive testimony, nor was it contradicted by any evidence on behalf of defendant; therefore the trial court properly directed a verdict for the plaintiff. Moore v. Leigh-Head & Co., 48 Okla. 228, 149 Pac. 1129; City of Claremore v. Southwestern Surety Ins. Co., 82 Okla. 118, 198 Pac. 573; Byers v. Ingraham, 51 Okla. 440, 151 Pac. 1061; Longest v. Langford, 67 Okla. 155, 169 Pac. 493; Smoot & Abbott v. W. L. Moody & Co., 34 Okla. 522, 125 Pac. 1134; Eminent Household of Columbian Woodmen v. Prater, 37 Okla. 568, 133 Pac. 48.

The facts necessary to a recovery on the part of the plaintiff were clearly and positively established by the evidence, although there was some contradiction as to immaterial issues. The defendant did not contradict any portion of the evidence of the plaintiff and introduced no evidence on its own behalf. Under these circumstances, and the cases cited, the trial court properly instructed a verdict for the plaintiff.

Therefore, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and LYDICK, JJ., concur.