40 N.J. Super. 1 (1956)
122 A.2d 1
E. JAY FERDINAND AND PHYLLIS C. FERDINAND, PLAINTIFFS-RESPONDENTS,
v.
AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, A CORPORATION, DEFENDANT-APPELLANT, AND APPLETON & COX, INC., ETC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1956.
Decided April 2, 1956.
*3 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. George I. Janow of the New York Bar argued the cause for the defendant-appellant (Mr. Samuel Dreskin, attorney).
Mr. Frederick C. Vonhof argued the cause for the plaintiffs-respondents (Mr. Albert M. Neiss, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
The defendant appeals from a judgment for the plaintiffs entered by direction of the court when the defendant rested without offering testimony at the close of the plaintiffs' case. The defendant argues that the case should have been submitted to the jury and that the sole issue is the propriety of the court's action in not doing so.
The action was on contract, to recover for the loss of seven pieces of jewelry under a "jewelry-fur floater" policy issued by the defendant to the plaintiffs in consideration of the premium paid. The insured items were specifically described in a schedule attached to the policy, with its dollar value set opposite each article. The policy provided that the property was insured "against all risks of loss or damage, * * * whilst in all situations" with certain exceptions not here involved.
The basis of the plaintiffs' claim was that the jewelry was stolen from their automobile while parked overnight on the grounds of a motel near Miami, Florida. Four witnesses testified for the plaintiffs: the plaintiffs themselves, a criminal investigator from the Sheriff's Office of Dade County, Florida, and a jewelry expert. The plaintiffs' testimony *4 is uncontroverted. They established that on February 12, 1954 they left their home in New Jersey on a trip to Florida, that the jewelry alleged to have been stolen was in a pouch in a locked jewel box on the rear seat of the automobile, covered by wearing apparel and luggage; that other luggage, furs and cameras were in the trunk compartment. On the night of February 14 they stopped at a motel near Miami, Florida, parked their car about 40 or 50 feet from the window of their room, locked it and retired for the night about 10 P.M. The following morning, about 8 A.M., the plaintiff, E. Jay Ferdinand, went to the car and discovered that it had been broken into; the glass of the right-hand front window had a hole in it about three inches in diameter, large enough to reach inside and open the door. He looked inside and saw "everything upset and disarrayed." The jewel box had been ripped apart, some of it was on the front seat and some on the floor. He called to his wife, and then ran to the motel office to tell them what had happened and to call the police. He found that seven pieces of jewelry, the subject of this litigation, as well as some uninsured costume jewelry, were missing, and that the whole bottom of the glove compartment had been torn out. Deputy Sheriff Priest responded to the call, took fingerprints and proceeded to make an investigation. While he was there, the plaintiff took a camera from the trunk of the car and took photographs which were received in evidence. Officer Priest testified, describing the condition of the car, its contents, the method probably used to force entry, and that to the best of his knowledge the items had never been recovered. The testimony of the plaintiffs regarding the condition of the car was substantially corroborated by that of the deputy sheriff and by the photographs.
The defendant offered no evidence whatsoever, but cross-examined the plaintiffs extensively, not only with respect to their direct testimony, but also as to the purchase of the jewelry, which had been bought over a period of years, some of it on the Bowery in New York City, paid for either in cash or in trade for other jewelry, and without receipts.
*5 Mr. Emanuel Kerber, a jewelry expert, testified as to the value of the jewelry at the time of the issuance of the policy and at the time of the loss. His appraisal of five of the seven items was made, in writing, on April 20, 1953, for the purpose of obtaining the insurance. The policy, issued on May 4, 1953, set forth the items of jewelry and the valuation of each as they appear on the appraisal. The policy recited that the insurance was "on jewelry * * * as per schedule attached or as scheduled below, being property of the assured. * * *" If the defendant desired proof of purchase and ownership of the items specifically insured, it should have required such information before the issuance of the policy. Under the circumstances the time and place of purchase was immaterial and irrelevant insofar as the claim for indemnification for loss under the policy is concerned, and no jury question was raised with respect thereto.
The trial court held that the policy here involved was an open, rather than a valued policy, even though the value of each item was specified in the contract. Karcher v. Philadelphia Fire & Marine Ins. Co., 32 N.J. Super. 496 (App. Div. 1954), modified and affirmed 19 N.J. 214 (1955). In the instant case, it is of no consequence whether it be regarded as one or the other, because the plaintiffs did furnish testimony as to the value at the time of the issuance of the policy and at the time of the loss. This testimony remained entirely uncontroverted by the defendant, and so there was no jury issue in that regard.
The remaining question pertains to the theft. At the conclusion of the plaintiffs' case, Judge Colie denied the plaintiffs' motion for a directed verdict, and when the defendant rested its case said he would let the case go to the jury, and recessed for lunch. When court reconvened, the judge said that during the noon recess he had reviewed the testimony and wished to hear further argument on the plaintiffs' motion. Thereafter, he rendered an oral opinion in which he held the plaintiffs entitled to a judgment for $11,775 and interest. He said:
*6 "I find from the evidence in this case that there is nothing from which a jury could draw a reasonable inference that the plaintiff did not own the seven specific articles claimed to have been stolen.
I further find there is nothing in the evidence which would permit the jury to draw a reasonable inference that the articles were not stolen from the automobile on the night of February 14 or the morning of February 15 and there is no evidence from which a jury could draw a reasonable inference that the values testified to by the plaintiff Mr. Ferdinand, or by an independent witness, Mr. Kerber, was other than that stated."
In an action on a jewelry floater insurance contract insuring specific property against all risks of loss, with certain exceptions, the plaintiff is entitled to recover if he establishes a loss under any unexcepted situation. The plaintiffs' complaint alleged that the jewelry was stolen. Loss of insured property by theft may be established by circumstantial evidence. Miller v. New Amsterdam Casualty Co., 94 N.J.L. 508 (E. & A. 1920).
It is entirely settled that where there are no disputed facts or disputed inferences to be drawn from uncontroverted facts which reasonably permit but a single conclusion, it is the duty of the court to direct a verdict. Polhemus v. Prudential Realty Corporation, 74 N.J.L. 570 (E. & A. 1906); Belcher v. Manchester Bldg. & Loan Ass'n, 74 N.J.L. 833, 839 (E. & A. 1907); Shapanka v. Nirenberg, 9 N.J. Misc. 1339 (Sup. Ct. 1931), affirmed 109 N.J.L. 550 (E. & A. 1932); Mortgage Corp. of N.J. v. Aetna Cas. & Surety Co., 19 N.J. 30, 38 (1955); Chicago, M. & St. P.R. Co. v. Coogan, 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041 (1926); Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720 (1929). Only where fair-minded men may honestly differ as to the conclusion to be drawn from the evidence, whether controverted or uncontroverted, is there a jury question. Earlin v. Mors, 1 N.J. 336 (1949); Bazinsky v. Conklin, 8 N.J. 40 (1951); Long v. Board of Chosen Freeholders of Hudson County, 10 N.J. 380 (1952). Generally, it is for the jury to determine whether there has been a loss of a nature covered by the *7 policy. "However, if the evidence is positive and consistent, and is not contradicted by either the physical facts or the surrounding circumstances, the court may properly direct a verdict." 8 Couch, Cyclopedia of Insurance, § 1183, p. 4230; General Accident, Fire & Life Assurance Corporation v. Thompson, 101 Okl. 138, 223 P. 666 (Sup. Ct. 1924).
The uncontroverted and unimpeached testimony of the plaintiffs and their witnesses showed the disappearance of the insured property under circumstances indicating a felonious abstraction and was consistent with their claim under the policy and with their complaint. To defeat the plaintiffs' case, one of two positions would have to be sustained: that the claim is a fabrication in that the jewelry was not stolen, or that the theft occurred through prearrangement. There were no facts or circumstances from which a jury could draw an inference of either assumption. Such a finding would be entirely speculative or conjectural and absolutely devoid of evidential support.
The rule on the submission to the jury of the credibility of a witness was lucidly stated by Mr. Justice Katzenbach in Potoker v. Klein, 105 N.J.L. 183 (E. & A. 1928) where a directed verdict was affirmed. He said:
"The argument made by the appellant is that the defendant clearly and frequently contradicted himself in his testimony and for that reason the truth of his testimony should have been left to the jury for its determination. The cases cited by the appellant to sustain this contention * * * all are cases which hold that where different inferences can be drawn from undisputed facts by fair-minded men a jury question is presented. This argument is specious as to the case under consideration. There was only one inference that could be drawn from the testimony * * *. Where evidence has but one meaning and but one legal conclusion can be drawn therefrom, and it is not controverted, there is no question for a jury to decide.
Assuming that the case had been submitted upon the plaintiff's theory that the jury were entitled to pass upon the credibility of the defendant because of alleged contradictions in his testimony; and the jury had returned a verdict for the plaintiff upon this theory of the case, the judgment would have to be reversed on review for the reason that there would be no evidence in the record to sustain the judgment * * *." *8 See also United States Fidelity & Guaranty Co. v. Donnelly, 72 N.J.L. 295 (E. & A. 1950); Trustees System Co. of Newark v. Lisena, 106 N.J.L. 549, 553 (E. & A. 1929).
Professor Wigmore thus states the rule:
"The usual situation is that of a plaintiff who has produced a mass of evidence sufficient to throw upon the defendant the liability of producing some evidence to the contrary, and if this duty is not sustained, it is the judge's function to make the decision. * * * The only objection here can be that the judge must not reach his decision by assuming the plaintiff's testimony to be true (because that is the jury's province); yet where the testimony is undisputed, or where in some other way that assumption is unnecessary, this objection disappears." 9 Wigmore on Evidence, § 2495, p. 306.
Professor Wigmore quotes at length from the opinion in Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 590, 72 A.L.R. 7 (Sup. Ct. 1929), which he says "convincingly expounds the correct principle with inexorable logic." There, the court said:
"If reasonable minds could arrive at but one conclusion from the evidence, by applying their intellectual processes thereto, then the question as to whether the party having the burden of proof has established the issuable facts in that particular case is a question to be decided by the judge, and not by the jury. * * * We come to the precise question involved in the instant case, where the party having the burden of proof depends for establishing the existence of the ultimate fact, either in whole or in part, upon the oral testimony of a witness who is interested in the transaction. * * *
* * * we are satisfied that the better view, * * * is that the rule of reasonable judgment must be applied to each case upon its particular facts, and, if the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict, and the direction of such verdict should not be prevented merely by reason of the fact that one or more of the witnesses are interested in the transaction or the result of the suit."
Moreover, we are admonished by R.R. 1:5-3, on a review of any cause involving issues of fact not determined by the *9 verdict of a jury, to give due regard to the opportunity of the trial court to judge of the credibility of the witnesses. Judge Colie had this opportunity at the trial.
Cases directly in point are Transcontinental Ins. Co. v. Stanton, 74 F.2d 936 (C.C.A. 7, 1935) and General Accident, Fire & Life Assur. Corporation v. Thompson, supra. In the Transcontinental case, the suit was brought to recover for theft of jewelry under a floater policy. At the close of the evidence, the court directed the jury to find that the articles alleged to have been stolen were in fact stolen, and that they should pass on the value of the jewelry and return a verdict therefor; judgment was accordingly rendered. From its examination of the record, the court could find no substantially contradictory evidence respecting the theft, nor did it disclose such inherent improbabilities as to have required submission to the jury. The provisions of the policy are substantially similar to those in the instant case, and the court said, 74 F.2d, at page 938:
"It [the policy] covered loss from any source except the few which the policy excepted and are not here in question. It was not essential to recovery that the loss was shown to have occurred through burglary or theft. If the insured shows a loss of the insured property, it is immaterial how the loss was occasioned, so long, of course, as the insured had no purposeful participation in it. That appellee actually lost the insured jewelry the record establishes beyond dispute, direct or inferential. * * *
* * * even though it may not appear that a particular theory advanced to account for the loss of the jewels had been definitely established, if, as here, it does appear that bona fide loss of them has in fact been sustained by the insured, this is sufficient to warrant recovery under the policy. We find no error in the court's direction complained of."
In the General Accident, Fire & Life Assur. Corporation v. Thompson case, supra [101 Okl. 138, 223 P. 668], also an action brought to recover on an insurance policy for loss of diamonds and other personal property alleged to have been taken forcibly from the plaintiff by highwaymen, at the conclusion of the plaintiff's evidence the defendant demurred and failed to offer any evidence in opposition to the plaintiff, *10 whereupon the court on motion directed a verdict in favor of the plaintiff. The only question argued was whether the court erred in not submitting to the jury, as a question of fact, whether or not the plaintiff was held up and robbed as alleged. The appellate court said that there were no physical facts or circumstances surrounding the transaction which would tend to contradict the positive testimony of the plaintiff, nor was his version inherently improbable. There, the appellant advanced argument similar to the contention of the defendant herein:
"* * * that the plaintiff is alone as a witness to the holdup and that he is a deeply interested witness, and then states, if this instructed verdict is right on the evidence in this case, that it would be tremendously easy to victimize an insurance company on policies assuming risk of loss by robbery from the person. We admit that this must be true, but when the defendant company assumed the risk in this case, it must have known from the very nature of the transaction that it was highly improbable that witnesses other than the assured himself could be produced to testify to a loss such as the one sued on herein.
We have carefully examined all the evidence in this case, and, while some portions of it as stated above are inconsistent and contradictory * * * evidence, as to the ownership of said diamonds by the plaintiff and the value thereof, and as to the loss by highway robbery, was not inconsistent, evasive, or unreasonable, nor did the physical facts and circumstances surrounding the transaction tend to contradict such positive testimony, nor was it contradicted by any evidence on behalf of defendant; therefore the trial court properly directed a verdict for the plaintiff."
In the instant case, as in the General Accident, Fire & Life Assur. Corporation v. Thompson case, supra, the defendant makes much of the manner of purchase of the jewelry, but we cannot say that the testimony was improbable. The defendant calls attention to the plaintiffs' testimony that Mr. Ferdinand's watch was in the jewel box. In the absence of any evidence that the couple lacked another timepiece, such a fact is not of itself a suspicious circumstance. We do not think that it altered in any wise the consistency of the plaintiffs' testimony with respect to the loss of the jewelry. On the entire case, the plaintiffs presented a clear, plausible, uncontroverted and believable story substantiating *11 that the property was stolen from their automobile by some person or persons unknown. Whether or not it was prudent to leave valuable jewelry in the automobile overnight is not a controlling issue. It may well be that the jewelry was left in what might be deemed an insecure place, and we may speculate endlessly as to how it disappeared; but we cannot know exactly, nor by whom, for malefactors are famed "for ways that are dark and for tricks that are vain."
The testimony indicated that the plaintiff, E. Jay Ferdinand, had been engaged in various occupations. When the policy in question was written, he was an agent for the defendant company. From that fact it is more reasonable to infer that the company at the time had sufficient confidence in his integrity to designate him as its agent, than it is to accept the defendant's inference that the plaintiff was predisposed to fraud.
From the uncontroverted proofs the trial court quite properly directed a verdict in the plaintiffs' favor. There was no evidence nor inference to be drawn from the proven facts upon which a jury verdict in favor of the defendant could have been based. Any verdict in favor of the defendant would necessarily have been bottomed solely upon mere conjecture or hypothesis not supported by the evidence, and if such a verdict had been rendered, the court would have been justified in setting it aside and entering a judgment for the plaintiffs, as was done in Mortgage Corp. of N.J. v. Aetna Cas. & Surety Co., supra, and as suggested in Potoker v. Klein, supra.
Judgment affirmed.