CROWN DRUG COMPANY, a foreign corporation, and O. A. Mattingly, Plaintiffs in Error,

v.

Frank McBRIDE, Defendant in Error.

No. 37233.

Supreme Court of Oklahoma.

Nov. 7, 1956.

As Amended Nov. 19, 1956.

Hudson, Hudson & Wheaton, W. F. Kyle, Tulsa, for plaintiff in error O. A. Mattingly.

Rucker, Tabor & Cox, Jean Charles Smith, Tulsa, for plaintiff in error Crown Drug Co.

Pat Malloy, Tulsa, for defendant in error.

CARLILE, Justice.

This action was filed in the District Court of Tulsa County by Frank McBride against the Crown Drug Company, a corporation, and O. A. Mattingly to recover damages for personal injuries sustained when the plaintiff fell through a sidewalk opening to the basement below. A verdict and judgment was rendered for plaintiff

against the defendants for $18,500, and they appealed. The parties will be referred to as they appeared in the trial court.

The record shows that the Crown Drug Company, as lessee, occupied a store building at the corner of Fourth and Main Streets in Tulsa, which building had a basement with a sidewalk opening, over which there was a steel grate or door consisting of two hinged parts which opened up and out when the opening was in use. The morning of the accident the defendant Mattingly obtained the key to the lock on the sidewalk door from the drug store and had propped open the grates. The plaintiff, a blind man 32 years of age was walking east along the sidewalk towards the street corner where he sold newspapers and fell through the sidewalk opening to the basement floor below, a distance of about five and a half feet.

At the conclusion of all the evidence the plaintiff moved the court to direct a verdict for the plaintiff on the ground that defendants' evidence was wholly insufficient to constitute a defense to the plaintiff's action and insufficient to raise an issue of contributory negligence. The defendants renewed their demurrer to plaintiff's evidence and moved for an instructed verdict in their favor on the ground that the plaintiff's evidence was insufficient to constitute a cause of action against them. The motions were overruled, with exceptions, and in overruling the motion of the plaintiff the court stated: "Well, I am inclined to think that the question of contributory negligence is still in here, so the motion will be overruled."

The assignments of error are presented on two propositions, the first:

"The Court erred in giving Instruction No. 9."

and the second:

"The Court erred in submitting the question of permanent injuries to the jury."

The first instruction, of which the defendants complain, is as follows:

"No. 9. You are instructed that under the evidence in this case the defendants were guilty of negligence in that in the delivery of the ice by the defendant Mattingly to the defendant Crown Drug Company the door in the sidewalk was left open during the time of its use to delivery said ice into the basement of the defendant, Crown Drug Company's store, and the defendants failed to use the care that an ordinarily prudent person would have used under the circumstances, by failing to place barriers around said opening to prevent pedestrians using said sidewalk from falling into said opening, or failing to station a watchman at or near said opening while said ice was being delivered into said basement to warn pedestrians using said sidewalk that said door was open; and you are further instructed that you should return a verdict against both defendants unless you find from the evidence of plaintiff or by a preponderance of the evidence introduced on behalf of the defendants that the plaintiff was guilty of contributory negligence, as hereinbefore defined."

Defendants say that the Court, in giving the instruction, took from the jury any consideration of the facts on the question of primary negligence, leaving the jury to pass only on the question of contributory negligence, and urges that a new trial be granted in order to let the jury pass on the question of whether or not the defendants were negligent under the facts and circumstances of the case. In support thereof defendants call attention to the case of Kansas, O. & G. Ry. Co. v. Clark, Okl., 262 P.2d 426, 427, which holds:

"1. When the evidence is conflicting or when the facts are undisputed, but different minds might reasonably draw different conclusions from them, the question of negligence is always for the jury."

Such rule is limited by its terms, and whether it applies in a particular case

depends upon the facts and circumstances of each case. The following decisions announce the rule in cases where there is no conflicting evidence, and it is such that all reasonable, fair minded men would agree on the question or issue involved.

"When the plaintiff fails to prove any facts from which negligence might be reasonably or logically inferred and the facts are such that all reasonable men must draw the same conclusion, the question of negligence is for the court." Richardson v. Parker, 205 Okl. 137, 235 P.2d 940, 942.

"It is not error to give a peremptory instruction for the plaintiff where the plaintiff's evidence makes out his case, and the defendant introduces no evidence to rebut it." General Accident, Fire & Life Assur. Corporation, Ltd. v. Thompson, 101 Okl. 138; 223 P. 666.

Rich v. Reynolds, Okl., 277 P.2d 985, 986, holds:

"Where a material fact is conclusively shown by undisputed evidence, then the giving of an instruction which assumes that such fact has been established is not error sufficient to justify a reversal of the judgment."

The preceding decision cites as authority, with others, the case of Byers v. Ingraham, 51 Okl. 440, 151 P. 1061, which holds:

"Where certain facts in issue in a cause are established by uncontroverted testimony, it is not necessary for the trial court to submit such facts to the jury for finding, and it is not error for the court to tell the jury that such facts are established and to announce the law applicable to such facts and to direct the jury to find accordingly."

"The question of negligence or no negligence is one of law for the court, where but one inference can reasonably be drawn from the evidence." Cain v. St. Louis-San Francisco Railroad Company, Okl., 293 P.2d 355.

See also Jackson v. General Finance Corp., 208 Okl. 44, 253 P.2d 166, and Vera State Bank v. Young, 147 Okl. 68, 294 P. 635.

We are unable to agree with defendant's statement to the effect that there is a conflict in the evidence on questions of fact, one as to the position of the grating over the sidewalk opening at the time of the accident, which should have warned the plaintiff of the obstacle in his path, and that the doors furnished a sufficient guard, and therefore the court should have submitted the question to the jury as to want of care on the part of the defendants. Defendants cite and rely on the Utah case of Clawson v. Walgreen Drug Co., 108 Utah 577, 162 P.2d 759, which holds:

"Where trap doors in sidewalk were left open and unguarded for about 15 minutes and a pedestrian with impaired eyesight collided with the doors, causing injury, whether building occupant having control over the doors was negligent was a jury question, as was question whether the open doors themselves furnished a sufficient guard."

In that case the question of primary negligence was submitted to the jury, who found for the plaintiff, and on appeal the defendant contended that there was no showing that defendant was guilty of negligence, but the Appellate Court said that the conduct of defendant at least presented a jury question. The opinion refers to the fact that there was a conflict between plaintiff's direct testimony and his testimony on cross-examination on how the accident occurred. The evidence in that case with respect to the sidewalk doors presented a different situation from that shown in the present action, and we do not consider the holding there to show or establish error in the case at bar. We think the following quoted language from the Utah decision is applicable to the present case.

"As compensation for the privilege of maintaining a door through the public sidewalk, the defendant had the duty of safeguarding the opening so as fairly to protect the public in its ordinary use of the street. This public street was open alike to the weak, the lame, the halt and the blind and those,

as the plaintiff, suffering from impaired eyesight. The presence of persons with impaired eyesight was reasonably foreseeable. A fall into the opening threatened serious bodily harm. These factors should be taken into account in determining whether or not the defendant exercised the requisite degree of care."

We have considered the case of Magay v. Claflin Sumner Coal Co. & L. K. Liggett Co., 257 Mass. 244, 153 N.E. 534, 53 A.L.R. 928, and Olson v. City of Butte, 86 Mont. 240, 283 P. 222, 225, 70 A.L.R. 1352, which cases involve the question of negligence relating to the use of sidewalk openings. The Massachusetts case was tried to the court without a jury, and we consider it as having little application to the question at issue. And the same may be said with respect to the Montana decision because the court there said:

"The evidence is in conflict as to whether or not the doors were thus secured at the time of the accident."

Decisions from this court are cited which announce the rule that where men of ordinary intelligence might differ on the question of negligence it was for a jury to decide, but we do not consider the rule controlling under the facts and circumstances in the present case. The plaintiff McBride testified that he had been to a barber shop and had started back to work and was walking east along the sidewalk. He was asked:

"Q. What happened then? A. Everything that followed that is very blurred. I reached with this hand to try to catch myself and failed and the next thing I knew someone was trying to pick me up, straighten me out or do something to me and there was several people around and—

"Q. Frank, you say when you reached out with your left hand and failed, what exactly do you mean? Describe to the jury what happened. A. I had this cane, I mean I had a cane in my right hand and my left hand was the only hand that was available and when I found myself falling, I tried to grab anything I could with this hand to keep myself from falling."

And he further stated that the next thing he knew was that he was in an ambulance—didn't know how he got there—and was in the hospital.

The defendant Mattingly was called as a witness by plaintiff and testified in part as follows:

"That he had been delivering ice to the Crown Drug Company since 1951 and was asked to tell how he went about making such deliveries and said:

"A. The best I can remember, that I went into the Crown, through the front entrance there and went to the fountain side, checked with the porter, John Brown, to go down to check the ice with me. * * * We went down and I unlocked the lock and opened the door and when you push the doors out, they lay flat back. * * * They are pretty heavy doors, I don't know exactly how heavy, they are made out of steel, so I took and put an ice pick in behind one of them and a pipe on the east side, to hold them straight up, and the one on the west side, there was a tin pan they use for ice and everything, they discarded, I would get it and put behind those railings and it wasn't straight up, probably on a 45-degree angle, something like that.

"Q. You unlocked, in other words, this door from underneath down in the basement, inside? A. Yes.

"Q. After you had opened it and after you had made these temporary props, by your own doing, then what did you do? A. I started bringing the ice in, I got maybe two or three sacks. * * * I went back down the stairs into the storage box, put it in the storage box, came back, then either the second or third sack, that I heard the door slam, then the porter got Frank McBride there, he was in the hole, coming down the stairs, when we got

hold of him and laid him down there and John Brown, the porter, went back to get the manager of the drug store. * * *

"Q. Was there anybody up above, on the level of the sidewalk, to warn pedestrians, or anything? A. No, sir.

"Q. Were there any guard rails around this opening? A. Only these lids was all.

"Q. You mean the part of the door itself? A. The door itself.

"Q. There was nothing else, any other type of guard rail? A. No, sir.

"Q. Had you ever mentioned that point to the managers of the Crown Drug Company? A. Yes, sir.

"Q. And how many times had you mentioned it to them? A. I don't remember how many times, but just about every time a new manager came I told him it was kind of dangerous, the best I can remember.

"Q. You mean dangerous to open this door without guard rails around it? A. Yes, have somebody falling in it. * * *

"Q. Now, you say, Mr. Mattingly, I believe, that the first time you saw the plaintiff, McBride, in this case, that he was through the hole and was down in the hole, is that right? Through the top, down in the hole? A. Yes, sir."

On cross-examination the witness was asked and answered:

"Q. Did you prop both those doors up? A. Yes, sir.

"Q. In a way that you thought was safe? A. Yes, sir. * * *

"Q. All right, one then walking east or west would have a door rail, or that one-half of the door as a rail up in front of them, wouldn't they? A. Yes, sir.

"Q. All right, did one come down during the—A. Yes, sir, the one on the west was down.

"Q. Did you hear it fall? A. Yes, sir.

"Q. What was the relation of the time that you heard that door fall and the time that this gentleman fell? A. I had started down with a sack of ice got about half way when I heard the door slam and I turned around and seen Mr. McBride hanging down inside the door."

The porter, John Brown, testified in part as follows:

"Q. After the doors were opened, were you there when McBride fell? A. Yes, sir.

"Q. What was the first thing you heard or noticed? A. I was sitting about six feet from the door, I just heard a bam and I looked up and there he was falling.

"Q. Do you know whether or not one of the door lids fell? A. Yes, sir. * * *

"Q. Do you know what made the bang? A. One of the bangs was when he landed on the steps downstairs, one bang was the door fell.

On cross-examination the witness testified:

"Q. The loudest sound was first, but you don't know whether that was the grate or McBride, do you? A. No, sir. * * *

"Q. Was he on the stairs or on the basement floor? A. Well, he was on the basement floor, I think his head was laying on the steps.

"Q. Was Mattingly there? A. Yes, sir."

"Occupant of premises abutting a public sidewalk owes the duty to the public to keep the sidewalk free of injurious objects or debris which might be placed there by its agents or be there as a result of the use of the sidewalk by the abutting occupant or which may be upon the sidewalk by reason of customers coming upon the

premises or by use of the sidewalk in pursuit of business done by occupant." Safeway Stores v. Duvall, 208 Okl. 21, 252 P.2d 1022, 1023.

"Negligence is the failure to do that which a person of ordinary prudence would have done under similar circumstances or the doing of that which such a person would not have done under the same or similar circumstances." Raimer v. Donelson, 200 Okl. 695, 199 P.2d 1018, 1019.

"A determination of the requirements of due care as the same should be exercised by an ordinarily prudent person rests in the first instance with the jury, and it is only where reasonable men would not differ or where the law definitely prescribes the standard of duty that the court may properly interfere with or revoke the determination of the fact finding group." Kelly v. Cann, 192 Okl. 446, 136 P. 2d 896, 899.

There is no conflict in the evidence in the present case with respect to the testimony and circumstances which resulted in plaintiff's injury, and from a consideration thereof we conclude as a matter of law that only one inference or conclusion would be drawn therefrom by reasonable men on the question of primary negligence, and that the trial court did not commit error in instructing the jury that the defendants were guilty of negligence and that they should return a verdict against the defendants unless they found the plaintiff guilty of contributory negligence. The question of contributory negligence was submitted to the jury, who found in favor of the plaintiff on that question. We find no error in the instruction first complained of.

As a second ground for reversal of the judgment the defendants say:

"The Court erred in submitting the question of permanent injuries to the jury."

and refers to Instruction No. 11, which follows:

"The court instructs the jury that if you find a verdict in favor of the plaintiff, then you should assess plaintiff's damages, if any, at such sum as you find from the evidence to be fair, adequate and reasonable compensation for:

"First, the nature, character and extent of the injuries, if any, sustained by the plaintiff on the occasion in question.

"Second, such pain and suffering, physical and mental, if any, suffered by plaintiff since October 22, 1954, as a direct result of such injuries, if any, to the present date, and such pain and suffering, physical and mental, if any, that you find the plaintiff will be reasonably certain to suffer in the future as a direct result of said injuries, if any.

"Third, such wages as you find plaintiff has lost since the date of his said injuries, if any, as a direct result thereof.

"Fourth, such wages and earnings as you find plaintiff will be reasonably certain to lose in the future, as a direct result of said injuries, if any.

"Given and excepted to by the Defendants."

We have considered the cases of Denton v. Arnstein, 197 Or. 28, 250 P.2d 407, Jones, v. Sechtem, 131 Okl. 155, 268 P. 201, and Forrest E. Gilmore Co. v. Hurry, 165 Okl. 29, 24 P.2d 653, cited and relied on by the defendants. The cases announce or follow the established rule that the question of permanent injuries shall not be submitted to the jury where there is no competent evidence to justify or sustain a finding thereon. We do not think the record in the case now before us shows a violation of such rule. It will be noted that Instruction No. 11 in the case at bar does not use the word permanent in refer-

ring to the injuries, if any, suffered by the plaintiff, but does refer to future pain and suffering, and future loss of earnings, if any, suffered by plaintiff.

In the Oregon case of Denton v. Arnstein, supra, the appellate court found that plaintiff's testimony was insufficient to justify submission of the question of permanent injury to the jury, but affirmed the judgment upon the apparent theory that the jury did not award compensation for permanent injury under the instructions given, and in its opinion stated [197 Or. 28, 250 P.2d 418]:

"It thus appears that in its instructions upon the measure of damages, the court omitted entirely any mention of permanent injury.

"We do not wish to be understood as holding that it would not have been proper for the court expressly to take that issue from the jury as requested; in fact, in any case where the evidence is insufficient to justify the submission of the issue of permanent injury to the jury, it is better practice for the court to take the question directly from the jury pursuant to a proper request therefor. However, in the light of the definite instructions that it did give upon the measure of damages, we cannot say that the court committed prejudicial error in refusing to give defendant's requested instruction."

In the case of Peppers Gasoline Co. v. Weber, 186 Okl. 471, 98 P.2d 1087, 1091, the opinion states as follows:

"The rule regulating the certainty of proof required to recover for permanent injuries is stated in 15 Am. Jur. p. 486, in the following language: 'To warrant a recovery for a permanent injury, the future effect of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively or with-

out a shadow of a doubt that the injuries are permanent. But while absolute certainty should not be required, a mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist.' "

The record in the present action shows that the injury complained of by plaintiff occurred on October 22, 1954, and the trial of the issues was had eleven months later on September 15, 1955. Following plaintiff's injury he was taken to a hospital where he was examined and treated for injuries, and remained in the hospital for 17 days prior to returning to his home. He was seen periodically by Dr. J until April when another doctor assumed the care and treatment of plaintiff. Dr. J was called as a witness by plaintiff and testified in part that he first saw the plaintiff in the emergency room in St. John's Hospital; that he was complaining of pain in the right shoulder, in the right knee and lower back, and had some superficial abrasions about the face over the right cheek and forehead, and on the right leg; that X-rays were taken of the patient; that his right shoulder was dislocated. He was given an anesthetic and the dislocation reduced; that he saw the patient frequently while he was in the hospital and occasionally thereafter until April 5th. The witness referred to a muscle spasm, which he described as nature's way of attempting to splint the body following an injury, and from statements of the patient he assumed that his fall was the cause of his present disability, pains and discomfort. The doctor, in his testimony, referred to the patient having arthritis prior to his injury, and was asked on cross-examination:

"Q. Now, assume, for the illustrations, for the purpost of this questioning, that he fell, as it has been outlined to you, now, of course, a fall can aggravate arthritis, can't it, Doctor? A. That is right.

"Q. But after it aggravates it, is that only a temporary thing? A. In some cases it—

"Q. What is your opinion in this case? A. Well, I would say that his complaint of symptoms lasted maybe longer than normal.

\* \* \* \* \* \*

"Q. Was this all subjective or did you find any objective residual when you examined him in April? A. Of course, he has the objective finding, this condition in the shoulder.

"Q. That is the arthritis, is it? A. Yes, sir.

\* \* \* \* \* \*

"Q. What, is your opinion, Doctor, as to whether or not he has, out side of his shoulder, recovered from the effects of the accident? A. Well, I think that he probably reached the full amount of his recovery, but I still can't definitely say, with this subjective complaint of pain, still have to assume that patient is being truthful, saying that he has pain in his back and shoulder.

"Q. Doctor, he was selling papers, I believe, as you know generally, he sells papers on the street, I believe I am correct in that, but assuming that be true, is he able to sell papers now? A. I don't know whether he could stand maybe all day and do it. Again it goes back to the subjective complaint of pain.

"Q. \* \* \* we know he had this accident, what I am getting at is this, and I believe the jury would be interested in it, if this lawsuit be out of the way, his condition is as it is today, do you think he could go back down there and sell papers? A. Well, I would assume that he could."

Doctor T, a medical doctor specializing in the field of psychiatry, and a member of the Tulsa Medical Association, testified that he examined the plaintiff in September, 1955 for the purpose of determining the extent of any psychiatric disability plaintiff might have; that the plaintiff told him he was afraid to walk around town on his own any more and the witness stated:

" \* \* \* Most of us rely upon our vision to keep us away from dangers, whereas the blind individual does have the problem that he is deprived of a very essential way with the contact with the outside world, so that my feeling was that he did have certainly a realistic fear."

Witness was then asked:

"Q. Would you say that this is a fear that will be difficult for him to eliminate, or that it can be eliminated in due time? A. \* \* \* I think it is something he will have to sensitize himself over a period of time to get back to where he can function in a relatively independent way, I am not sure he will, but I think he will."

The plaintiff, in the course of his direct examination, was asked:

"Q. Frank, why is it that you feel that you have to have people assist you now, when you did not use to feel that way? A. Because I am afraid the same thing will happen over again.

"Q. Did you have any fear before? A. Not before the accident."

Dr. A, who specializes in arthritis and rheumatic diseases, was called by the plaintiff and testified that he first examined the plaintiff in July, 1955, and that plaintiff was under his care and treatment at the time of the trial. He was asked:

"Q. Doctor, do you have any opinion as to whether or not this condition with respect to this muscular disability is the result of the accident that he described to you? A. I feel it is.

"Q. Has he made any progress under your treatment? A. He has.

"Q. Doctor, in connection with muscular injury of the type that Mr. McBride has, will you state, with respect to the duration, or how long that might last or continue from that source, as a doctor treating this type of injury? A. Some of these injuries last an indefinite period of time and others respond rather rapidly.

"Q. And what do you mean by an indefinite period of time? Have you had any examples or illustrations? A. I have had one or two patients who have been under therapy for injury to the low back for as long as a year and a half or two years now.

\* \* \* \* \* \*

"Q. In your opinion is he fully recovered? A. He hasn't fully recovered as yet, but he has a marked increase in the amount of motion, so that he can flex his legs straight out and he can walk almost normally when he has no pain."

The witness was asked on cross-examination:

"Q. Do you think he is at the stage where he can go back to selling papers? A. If he continues at the rate he has been progressing, I would think so."

In the case of Danner v. Chandler, 204 Okl. 693, 233 P.2d 953, 957, the doctor was asked whether or not, in his opinion, the plaintiff would suffer pain in the future from her injuries and answered in the affirmative, but further stated:

"'However, she is improving and she has improved some since the last examination with reference to these symptoms and I think she will continue to make some improvement, some further improvement. I think it is impossible to say how long or just how long a period of time it might be but she is improving and I think will continue.'"

It was there held that the medical expert's testimony was sufficient to justify the submission of an instruction to the jury on the question of pain and suffering and the permanency thereof.

In the case of Y & Y Cab Company v. Smith, Okl., 289 P.2d 964, 967, the opinion shows that the medical expert was asked if he knew if plaintiff would need further medical treatment and answered:

"'That is to some extent speculative. My experience tells me that she will need some. How much, I don't know. It could be a lot or it might be a lot or it might be very little.'"

and further expressed the opinion that the plaintiff was not malingering, and in that case this court expressed the opinion that the testimony of the physician was sufficient to warrant a consideration of the question by the jury. See also Oklahoma Ry. Co. v. Alexander, 205 Okl. 691, 240 P.2d 742.

█ Upon consideration of the testimony presented and the law applicable thereto, as announced in the prior decisions of this court, we conclude and hold that the testimony submitted by the plaintiff was sufficient to justify the trial court in submitting the questions as embodied in Instruction No. 11, and hold that the trial court did not commit error in the giving of such instruction.

█ The defendant's second proposition is not supported by the record.

"Where there is any competent evidence tending to sustain the verdict of the jury and judgment of the court based thereon and the instructions fairly presented the law governing the issues in the case and no prejudicial error is otherwise shown, such verdict and judgment will be affirmed." Danner v. Chandler, supra.

We find no material error in the record, and the judgment of the District Court is affirmed.